Willie Leroy JONES, Petitioner–Appellant,

v.

Edward W. MURRAY, Director of the Virginia Department of Corrections, Respondent–Appellee.

No. 90–4004.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 4, 1990.

Decided Oct. 1, 1991.

Alan William Clarke, Clarke & Clarke, Kilmarnock, Virginia and Gary S. Guzy, Washington, D.C., argued, for petitioner-appellant.

Robert B. Condon, Asst. Atty. Gen., Richmond, Va., argued (Mary Sue Terry, Atty. Gen., Office of the Atty. Gen., on brief), for respondent-appellee.

Before ERVIN, Chief Judge, and WIDENER and WILKINSON, Circuit Judges.

## OPINION

WIDENER, Circuit Judge:

Willie Leroy Jones challenges a Virginia state court judgment sentencing him to death. The United States District Court for the Eastern District of Virginia denied his petition for a writ of habeas corpus. We affirm.

In January 1984, Jones was tried by a jury in York County, Virginia and found guilty of the capital murders of Graham and Myra Adkins.[1] Pursuant to Va.Code Ann. § 19.2–264.2, the jury on each count found that Jones' "conduct in committing the offense is outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or aggravated battery to the victim beyond the minimum necessary to accomplish the act of murder...." The jury fixed his penalty at death and the trial court entered judgment accepting the jury's recommendation and confirming the verdicts. Jones unsuccessfully appealed his conviction and sentence to the Virginia Supreme Court. *Jones v. Commonwealth,* 228 Va. 427, 323 S.E.2d 554 (1984). The United States Supreme

---

1. Jones was indicted on two indictments, one for Mr. Adkins and one for Mrs. Adkins, on charges of killing during the commission of robbery while armed with a deadly weapon and also on a charge of killing more than one person as part of the same act or transaction. Each indictment was returned pursuant to Virginia Code sections 18.2–31(d) and 18.2–31(g), which now appear substantially unchanged as sections 18.2–31(4) and 18.2–31(7).

Court denied Jones' petition for a writ of certiorari. *Jones v. Virginia,* 472 U.S. 1012, 105 S.Ct. 2713, 86 L.Ed.2d 728 (1985).

Jones then filed a petition for a writ of habeas corpus in the Circuit Court of York County. This petition was denied. The Virginia Supreme Court found no error in the denial and refused Jones' petition for appeal. *Jones v. Bair,* No. 86–1152 (June 15, 1987). The United States Supreme Court subsequently denied Jones' petition for a writ of certiorari. *Jones v. Bair,* 484 U.S. 959, 108 S.Ct. 358, 98 L.Ed.2d 383 (1987).

Jones next sought relief in the federal courts and on March 22, 1988 filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Virginia. The district court referred the matter to a United States Magistrate, who filed a report recommending that the petition be denied and dismissed. In a final order entered on January 4, 1990, the district court denied and dismissed Jones' petition. A motion to alter or amend this judgment was filed by Jones and denied by the district court in an order filed April 9, 1990. This appeal followed.

A brief summary of the facts surrounding the crimes of which Jones was convicted is necessary for an understanding of the issues presented.[2] Testimony given at Jones' trial indicated that at approximately 1:00 p.m. on May 13, 1983, smoke was noticed coming from the home of Graham and Myra Adkins, an elderly couple living in Charles City County. Several persons approached the house and, finding that no one responded to their knocking on the locked front door, broke the door open. They found the body of Mr. Adkins, aged seventy-seven, lying near the door. They succeeded in carrying the body out of the house, but further rescue efforts were prevented by the intensity of the fire and smoke.

When the police and other local authorities later examined the remains of the Ad-

kins' home, they found evidence of petroleum distillates indicating that the fire was of incendiary origin. They found an empty safe in a bedroom and the door of the safe in another room. In addition, the severely burned remains of the seventy-eight year-old Myra Adkins were found in a bedroom closet.

When the authorities examined the bodies of Mr. and Mrs. Adkins, they found that both had been shot in the head at close range. Both bodies had also been doused with accelerant. The medical examiner who performed the autopsies on the bodies testified that Mr. Adkins had died within a short interval after a bullet was fired into his face and penetrated his brain. Mrs. Adkins, on the other hand, received a head wound that would not have brought about death for several hours. The medical examiner testified that Mrs. Adkins, who had been placed bound and gagged in the closet, had died from carbon monoxide poisoning due to smoke inhalation. Jones had bound and gagged and shot her, set her on fire while she was still living, and left her to die, which she did.

We turn now to the several issues raised on appeal. In asking that we reverse the judgment of the district court, Jones argues that: (I) his trial counsel rendered constitutionally ineffective assistance; (II) the jury instructions given at the penalty phase of his trial contained a constitutionally infirm aggravating factor; and (III) the jury instructions failed to satisfy constitutional requirements concerning mitigating factors.

## I.

Jones' allegation of ineffective assistance involves a number of distinct elements. We will consider each of these claims in turn.

■ Jones first argues that his trial counsel rendered ineffective assistance by failing to advise him properly with regard to an offered plea agreement. The state

---

**2.** These facts are taken from *Jones v. Commonwealth,* 228 Va. 427, 323 S.E.2d 554 (1984), and are not in dispute.

habeas court found that on the morning of the first day of Jones' trial, the Commonwealth's Attorney offered Jones' counsel a plea bargain, the essence of which was that Jones, in return for guilty pleas to capital murder and arson charges, would receive two consecutive life terms and some additional time on the arson charge. Counsel communicated this offer to Jones and discussed it with him on at least two occasions. Counsel reviewed with Jones the evidence against him and discussed the strengths and weaknesses of the prosecution's case. He informed Jones that, in his estimation, there was a seventy percent probability of conviction and a forty to fifty percent chance of receiving the death penalty. He advised Jones that he would probably receive eventual parole if he accepted the plea, but cautioned that the estimates were no more than guesses about future outcomes. The state court found that these estimates were reasonable under the circumstances. Having communicated this information, counsel made no recommendation and left the decision of whether to accept the plea offer to Jones. Jones rejected the offer for the stated reason that he was innocent.

Under 28 U.S.C. § 2254(d), written findings of historical fact by the state habeas court are presumed to be correct and entitled to deference unless shown to be erroneous by enumerated statutory conditions. Our review of the record as a whole discloses no evidence of such conditions set forth in § 2254(d) and we conclude that the findings of fact by the state court are fairly supported by the record. See *Sumner v. Mata*, 449 U.S. 539, 550, 101 S.Ct. 764, 770, 66 L.Ed.2d 722 (1981).

In considering Jones' claim that his counsel's assistance was so defective as to require reversal of his death sentence, we follow the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Jones must therefore show that his counsel's performance was so deficient "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and that this deficient performance prejudiced

the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. The first prong of this test requires us to evaluate counsel's performance in light of an "objective standard of 'reasonably effective assistance' under 'prevailing professional norms.'" *Briley v. Bass*, 750 F.2d 1238, 1247 (4th Cir.1984), cert. denied, 470 U.S. 1088, 105 S.Ct. 1855, 85 L.Ed.2d 152 (1985).

Jones contends that his counsel acted in what he calls a "professionally unreasonable" manner by neither recommending that he accept the plea bargain nor attempting to persuade him to do so. Jones argues that the district court's rejection of this claim was improper in view of prevailing precedent and professional standards. We cannot agree. Our review of the relevant authorities does not support the contention that Jones' counsel violated prevailing professional norms. The American Bar Association's standards, recognized by the Supreme Court as "guides to determining what is reasonable," *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065, provide the following guidelines concerning the proper relationship between defense counsel and client in the plea agreement context:

(a) Defense counsel should conclude a plea agreement only with the consent of the defendant, and should ensure that the decision whether to enter a plea of guilty or nolo contendere is ultimately made by the defendant.

(b) To aid the defendant in reaching a decision, defense counsel, after appropriate investigation, should advise the client of the alternatives available and of considerations deemed important by defense counsel or the defendant in reaching a decision.

III American Bar Association Standards for Criminal Justice, Standard 14–3.2 (2d ed. 1986 Supp.).

We are in agreement with the conclusion reached in the district court that counsel's performance did not violate professional standards. In accordance with Standard 14–3.2(a), counsel notified his client when he received the plea bargain offer from the Commonwealth's Attorney and informed him of the terms of the offer. Counsel

advised his client concerning the available alternative of proceeding with trial, as suggested by Standard 14–3.2(b), and presented an opinion concerning the probable outcomes of both the guilt and sentencing phases that we have found to have been reasonable under the circumstances. See also II American Bar Association Standards for Criminal Justice, Standard 4–5.1 ("[T]he lawyer should advise the accused with complete candor concerning all aspects of the case, including a candid estimate of the probable outcome."). As further suggested by Standard 14–3.2(b), counsel advised his client of the important consideration of the strengths and weaknesses of the Commonwealth's case against him. He also responded to his client's questions concerning the potential for parole if he accepted the plea bargain. After offering Jones this advice and assistance, counsel followed Standard 14–3.2(b) by allowing his client to make the ultimate decision. See also II American Bar Association Standards for Criminal Justice, Standard 4–5.2(a)(1). In this regard, various Standards placed upon counsel an affirmative duty to avoid exerting "undue influence on the accused's decision" and to "ensure that the decision ... is ultimately made by the defendant." American Bar Association Standards for Criminal Justice, Standards 4–5.1(b) & 14–3.2(b). We cannot conclude that counsel's decision, at this point and in the context of his client's rejection of the plea offer for the stated reason that he was innocent, to refrain from a vigorous attempt to change his client's mind was "outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066.[3]

Jones next argues that his counsel rendered ineffective assistance by failing to investigate available mitigating evidence that could have been introduced at the penalty phase of Jones' trial. Specifically, he contends that his counsel did not seek any psychiatric evaluation to determine why Jones, who had no prior criminal record, would have committed the murders, and did not investigate other sources of character testimony that could have evoked mercy from the jury.

The state habeas court found that prior to his trial, Jones was examined by James C. Dimitris, M.D.; Henry O. Gwaltney, Ed. D., a forensic clinical psychologist; and William M. Lee, Ph.D., a forensic clinical psychologist. Pursuant to a court order, these doctors directly examined Jones at Central State Hospital and had access to information concerning his alleged crimes, including investigative reports of the Virginia State Police, statements made by Jones to the authorities, and information from the office of the Commonwealth's Attorney. Jones was found to be competent to

---

3. Our decision in *United States v. Jones,* 392 F.2d 567 (4th Cir.), cert. denied, 393 U.S. 882, 89 S.Ct. 186, 21 L.Ed.2d 156 (1968), does not require a different result. *Jones* presented a situation unrelated to that now before us and involved no claims of ineffective assistance of counsel. At the end of the opinion, a footnote was appended containing the observation that "this is the kind of case which should never have been tried." *Jones,* 392 F.2d at 569 n. 3. The type of case to which the opinion referred was one where the defendants challenged the competency of various evidence used to convict them of escaping from Lorton Reformatory. The court stated that "[s]ince people are either in or out of prison, and most of them lawfully so, it is difficult for a United States Attorney to fail to secure a valid conviction in a prosecution for escape...." *Jones,* 392 F.2d at 569 n. 3. In *this* kind of case, the opinion continued, "nothing is gained for the defendant by pleading not guilty" and a client should "be advised strongly to plead guilty." *Jones,* 392 F.2d at 569 n. 3.

These comments should not be viewed as establishing a per se rule applicable to all circumstances and cases. Indeed, if we accepted petitioner's argument and held that the comment in the *Jones* footnote constitutes a binding rule of conduct in all cases, we would run afoul of the Supreme Court's explicit warning that "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Strickland,* 466 U.S. at 688–89, 104 S.Ct. at 2065; see *Nix v. Whiteside,* 475 U.S. 157, 165, 106 S.Ct. 988, 993, 89 L.Ed.2d 123 (1986) ("[A] court must be careful not to narrow the wide range of conduct acceptable under the Sixth Amendment so restrictively as to constitutionalize particular standards of professional conduct...."). Rather, we merely decide that in this case and under these circumstances, counsel's performance was within the range of reasonable professional assistance.

stand trial and legally sane at the time of his alleged crimes.

The state court further found that Dr. Lee and Dr. Gwaltney conducted examinations of Jones focusing on the issue of mitigating mental factors and circumstances. Dr. Lee and Dr. Gwaltney both reported finding no evidence that Jones was under the influence of extreme mental or emotional disturbance at the time of the crimes. Neither doctor found any evidence that Jones, at the relevant time, did not have the capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. Jones' counsel was fully aware of the doctors' findings prior to trial. The state court, as an additional finding of fact, found that there is no evidence that, at the time Jones committed the murders, any mitigating mental circumstances existed.

Jones disputes the state court's account and, in particular, the factual finding that Dr. Lee and Dr. Gwaltney conducted their examinations with an eye towards sentencing mitigation issues. Jones has not, however, pointed to any evidence to meet his burden of establishing by convincing evidence that the state court's findings were erroneous. See *Sumner*, 449 U.S. at 550, 101 S.Ct. at 770. Our own review of the record leads us to conclude that the findings of the state court presented above were not erroneous. These findings of historical fact will therefore provide the basis for our consideration of Jones' claims of ineffective assistance in this regard.

■ Jones argues that his counsel was ineffective in that he "utterly failed to conduct any investigation of appellant's psychiatric makeup" and did not seek any "independent" psychiatric evaluation. The first portion of this claim is rebutted by the fact that Jones, as discussed above, was indeed examined by a physician skilled in the diagnosis of insanity, who was a board certified psychiatrist and the medical director of the forensic unit of the hospital, a mental institution, and as discussed above, two clinical psychologists who testified, at the state habeas court's evidentiary hearing, that they conducted a complete series of psychological tests on Jones and assessed him for possible mitigating mental or emotional factors at the time he committed the murders. The psychologists testified that they were familiar with Virginia's statutory provisions regarding mitigating mental conditions. They ultimately concluded that there was no evidence of any such mitigating mental factors. Counsel, according to his own testimony corroborated by that of the two psychologists, was in regular communication with the doctors during the course of their examinations of Jones. This communication included written reports, phone conversations, face-to-face meetings, and a conference lasting several hours on the eve of trial. In view of these efforts, we conclude that counsel was not deficient in his investigation of his client's psychiatric make-up.

■ Jones further argues that counsel should have sought what he calls "independent" evaluation. We note that Jones has pointed to no evidence indicating that counsel did in fact suspect, or should have suspected, that either the physician or the psychologists were biased in the performance of their duties. He simply recites the fact that they were state employees and contends that this alone made it unreasonable for counsel to rely on their objectivity. Counsel, on the other hand, had the opportunity to work with Dr. Dimitris, Dr. Lee, and Dr. Gwaltney and observed the psychologists, at least, first-hand during the performance of their tasks. There is no indication that he found any reason to doubt their objectivity. To the contrary, he reached the conclusion that their expertise would be helpful to Jones' case and utilized the psychologists in selecting the jury and as witnesses for the defense. We believe that this reliance on their work has not been shown to have been unreasonable. Similarly, we conclude that counsel's decision, based upon the advice of these psychologists that his client suffered from no mitigating psychiatric conditions at the time of his crimes, not to devote additional time and effort to further evaluation was within the range of reasonable professional judgment. We accordingly find no error in

the district court's rejection of Jones' ineffective assistance claim relating to psychiatric evaluation.[4]

■ We also agree with the district court's rejection of Jones' claim that his counsel rendered ineffective assistance by failing to investigate "numerous obvious sources of character testimony that could have evoked mercy on the part of the jury." The alleged sources may usefully be broken down into three groups. The first potential witness group includes individuals whose names were suggested to counsel by Jones. The state habeas court found that counsel pursued all of Jones' suggestions of character witnesses, but found that nearly all of them, including two church deacons and personnel at the high school and community college attended by Jones, were not willing or able to testify. With regard to Michelle Ford, one of the individuals who apparently was willing to testify, the state court found that counsel believed that she would be a hostile witness because she was testifying for the Commonwealth and decided not to contact her. Although particular objection was not made to the attorney's failure to call Jones' girlfriend, she being grouped in the most general terms with witnesses supposedly favorable to Jones which were not called, no showing has been made of the purport of her proposed testimony; therefore, a finding of ineffective counsel for not calling her may not be sustained. On this factual basis, we conclude that counsel's investigation of these individuals was not deficient and his actions under the circumstances might well "be considered sound trial strategy." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (quoting *Michel v.*

*Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)).

■ A second group of potential witnesses consists of several people who apparently were not suggested by Jones to his counsel, but who testified in the state habeas court that they would have been willing to testify at trial had they been asked to do so. With regard to these potential witnesses, the state court found that their testimony was merely cumulative of testimony actually presented during Jones' trial by Jones' mother and Jay Scales, a friend of Jones. Finding nothing in the record to contradict this finding, we conclude that Jones was not prejudiced by not having their testimony presented. A third group of potential witnesses consists of several individuals who, in affidavits submitted to the district court, stated that they would have testified favorably for Jones at the penalty phase of the trial if they had been asked to do so. One of these affiants was Jones' sister. Jones has done nothing to rebut the state court's finding that counsel made a conscious decision not to call her as a witness because he perceived that she, as had Jones' mother, would display a cool and reserved demeanor before the jury that would be unhelpful to his case. We therefore agree that the decision not to call her was a reasonable exercise of professional judgment. With regard to the remainder of the affiants, we also agree with the district court that their proffered testimony does not raise a reasonable probability that the result of the proceedings would have been a sentence other than death if they had testified. See *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Having found this lack of sufficient

---

4. Jones also raises a claim concerning psychiatric evaluation that is apparently distinct from his claims of ineffective assistance. He argues that the district court committed reversible error by denying his motion for expert psychiatric assistance. Under 18 U.S.C. § 3006A(e)(1), the district court may grant requests for expert services other than counsel upon a finding that "the services are necessary and that the person is financially unable to obtain them." In this case, the magistrate made a finding that Jones had established no factual basis to support his claim that further psychiatric evaluation was necessary. The district court accepted the mag-

istrate's recommendation and denied Jones' motion. On the record before us, we see no basis for overturning the district court's ruling. Jones has undergone a complete series of psychological tests by Dr. Lee and Dr. Gwaltney which found no evidence of mitigating mental conditions. Dr. Dimitris' report is a part of the state record. Furthermore, the state habeas court granted Jones' motion to have independent psychiatric evaluation conducted at that stage, but Jones has not seen fit to introduce any information gained during this evaluation. In light of these facts, we find no basis for overruling the district court's determination.

prejudice, we need not address the other component of the *Strickland* inquiry and reject this aspect of Jones' ineffective assistance claim.[5] 466 U.S. at 697, 104 S.Ct. at 2069.

■ Jones presents one further argument to support the claim that his counsel acted unreasonably in development of the case in mitigation. He points to the Commonwealth's closing argument, during which the following statement was made:

> Was [Jones] honorably discharged from the Army? If he had had some valuable characteristics, some valuable acts that he had done there, I think that they would have been in front of you.

Jones argues that he did in fact receive an honorable discharge from the Army and that counsel's failure to present this fact to the jury constituted ineffective assistance. The state court addressed this claim and made a factual finding that Jones' counsel had made a timely attempt to obtain the relevant records from the Army. Through no fault on his part, however, the records were not received until after trial. Jones has not disputed these factual findings and we find no basis for holding that counsel acted outside the range of competence demanded of attorneys in criminal cases.

■ Another element of Jones' argument on appeal is that the district court erred in rejecting his claim that counsel rendered ineffective assistance by failing to call his client to testify during the sentencing phase of the trial. The state habeas court found that Jones had incriminated himself with a confession made during a custodial interrogation, which the trial court had excluded on *Miranda* grounds, but ruled that the confession had been made voluntarily and was therefore competent for purposes of impeachment. Jones' counsel advised him not to take the stand at the penalty phase of his trial. Counsel based this advice on his concern that Jones' suppressed confession might be brought before the jury. He apparently felt that if Jones took the stand to testify, the door might be opened for the prosecution to impeach him through the confession. Counsel did not believe that the court would limit cross-examination to prevent the exposure of Jones to impeachment on this ground. Counsel further believed that if the jury learned about the confession, they would certainly sentence Jones to death.

Jones argues that it was unreasonable for counsel not to put his client on the

---

**5.** Jones alleges that the district court was required to grant him an evidentiary hearing in this case. In federal habeas corpus proceedings, an opportunity to offer evidence on an issue of fact is mandatory if the petitioner can show the existence of certain circumstances set out in 28 U.S.C. § 2254(d) and *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). See *Roach v. Martin,* 757 F.2d 1463, 1469 (4th Cir.), cert. denied, 474 U.S. 865, 106 S.Ct. 185, 88 L.Ed.2d 154 (1985).

Jones appears to contend that two of these criteria are met in the present case. He first argues that the state habeas court did not make unambiguous findings of historical fact, but merely stated its opinions as legal or mixed factual-legal conclusions. We construe this argument to be based upon the Supreme Court's statement that an evidentiary hearing is required if the state habeas court's opinion "presents a situation in which the 'so-called facts and their constitutional significance [are] ... so blended that they cannot be severed in consideration'" and thereby leaves doubt over whether the court actually reached and decided the issues of fact. *Townsend,* 372 U.S. at 315, 83 S.Ct. at 758 (quoting *Rogers v. Richmond,* 365 U.S.

534, 546, 81 S.Ct. 735, 742, 5 L.Ed.2d 760 (1961)). Our review of the order issued by the state habeas court convinces us that Jones' argument is without merit. The state court, after a full hearing, stated in its written opinion explicit findings concerning the "basic, primary, or historical facts ... 'in the sense of a recital of external events'" surrounding the acts which Jones alleges constituted ineffective assistance of counsel. *Cuyler v. Sullivan,* 446 U.S. 335, 342, 100 S.Ct. 1708, 1714, 64 L.Ed.2d 333 (1980) (quoting *Townsend,* 372 U.S. at 309 n. 6, 83 S.Ct. at 756 n. 6). We therefore conclude that Jones was not entitled to an evidentiary hearing on this basis.

Jones' second argument is that an evidentiary hearing was mandated by the fact that the state habeas court's factual determinations concerning ineffective assistance of counsel were not supported by the record as a whole. We have reviewed the state court record and are convinced that the state court's factual determinations adopted in this opinion are fairly supported by the record as a whole. A further evidentiary hearing in a federal court would therefore not enhance the quality of justice rendered Jones in the state courts. See *Roach,* 757 F.2d at 1476.

stand and not to seek a ruling from the court that would have allowed Jones to testify, without denying guilt, about his "character and background." In response to this argument, the magistrate and the district court observed that if Jones had in fact taken the stand at any time without denying that he committed the murders, the effect would have been much the same as airing a confession before the jury. Under this reasoning, even if Jones' counsel acted improperly by not calling his client to the stand in the manner now suggested, the effect would not have been prejudicial to the defense.

Jones urges us to reject the reasoning embodied in the opinion of the district court. But while Jones now insists that he was prepared to testify as to "numerous compelling aspects" of his character and background that "could have had a significant impact" on the jury's sentencing decision, we emphasize that a defendant must do more than show that an alleged error on the part of counsel "conceivably could have influenced the outcome." *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067. Rather, the defendant must affirmatively show that there is a reasonable probability that, if Jones had testified about his character and record, the jury would not have imposed the death penalty.[6] On the record before us, we find that Jones has simply not made such a showing. His references to "compelling," "numerous," but unspecified aspects of his character and record provide us with no basis for reversing the decision

---

**6.** By focusing on the prejudice prong of the *Strickland* test, we do not mean to imply that Jones has carried his burden of showing that counsel's advice that Jones not testify was professionally unreasonable. See 466 U.S. at 697. We note that the burden borne by a petitioner advancing such a claim is a substantial one. See *Hutchins v. Garrison*, 724 F.2d 1425, 1436 (4th Cir.1983), cert. denied, 464 U.S. 1065, 104 S.Ct. 750, 79 L.Ed.2d 207 (1984) ("Counsel's advice not to testify is a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance.").

In this respect, we must add that while the question of admissibility of the confession is not before us and we do not decide it, it is at once apparent that the analysis of Jones' attorney was not unreasonable. In Jones' present brief, he assigns error to his attorney's decision not to call Jones at the sentencing phase of the case so that he "could have testified to numerous compelling aspects of his character and background that could have had a significant impact on the jury's determination."

Under Virginia law, a defendant who takes the stand and puts his character at issue may be cross-examined as to prior specific instances of misconduct. See *Thompson v. Commonwealth*, 193 Va. 704, 715, 70 S.E.2d 284, 291 (1952); C. Friend, *The Law of Evidence in Virginia* § 49 (2d ed. 1983 & Supp.1987). The Commonwealth is allowed "wide latitude" on cross-examination of character witnesses. *Zirkle v. Commonwealth*, 189 Va. 862, 872, 55 S.E.2d 24, 30 (1949). In declining to advise Jones to take the stand and testify as to the "compelling aspects of his character," any concern of Jones' attorney is bound to have been reasonable that in so testifying, Jones would have been testifying as to his own good character and thereby become subject to cross-examination concerning specific instances of misconduct, including those contained in his suppressed confession. Even if the confession might have been considered extrinsic evidence and inadmissible under a similar theory to that expounded in *Land v. Commonwealth*, 211 Va. 223, 176 S.E.2d 586 (1970), a gamble that the trial court would have considered the confession as extrinsic evidence does not seem well taken.

The Supreme Court has directed that statements obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) may be used on cross-examination to impeach the defendant who made them. *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). The Court stated that "[t]he shield provided by *Miranda* cannot be perverted into a license to use perjury" and escape "the traditional truth-testing devices of the adversary process." *Harris v. New York*, 401 U.S. at 224–25, 91 S.Ct. at 645–46. While this reasoning has generally been applied to permit impeachment as to inconsistent assertions of specific facts, these principles might well embrace situations in which the tenor of testimony or conclusion sought is contrary to a previous inconsistent statement. The attorney's concern that these principles might be applied to his client's attempt to testify as to his own good character and subsequent decision not to risk putting his client on the stand cannot be termed unreasonable, particularly in view of his belief that the jury would certainly impose the death penalty if it knew of Jones' confession.

After Jones' attorney had gained what must be considered a major advantage, both tactical and substantive, in achieving the suppression of the confession, it seems to us that a decision to advise Jones to take the witness stand would have been more subject to criticism than the decision not to, for at the very best, it would have placed in jeopardy the advantage previously gained.

of the district court. We therefore affirm the district court's rejection of this portion of Jones' ineffective assistance claim.

## II.

In addition to his claims concerning ineffectiveness of counsel, Jones argues that the jury instructions given during the penalty phase of his trial were constitutionally defective.[7] Because these instructions were drawn from the language of Virginia's death penalty statute, Jones advances several claims concerning the structure and application of Virginia's statutory scheme.

Under Virginia law, the death penalty may be imposed if the jury finds beyond a reasonable doubt that "there is a probability based upon evidence of the prior history of the defendant or of the circumstances surrounding the commission of the offense of which he is accused that he would commit criminal acts of violence that would constitute a continuing serious threat to society, or that his conduct in committing the offense was outrageously or wantonly vile, horrible or inhuman, in that it involved torture, depravity of mind or aggravated battery to the victim." Va.Code Ann. § 19.2–264.4.C. Because the trial court did not instruct the jury on the future dangerousness component of the statute, and the sentence was not based on that aspect of the statute, Jones focuses his attack solely upon the vileness aggravating factor.

■ We have previously upheld the facial validity of this aggravating factor against constitutional challenge in *Clozza v. Murray*, 913 F.2d 1092, 1105 (4th Cir. 1990), cert. denied, — U.S. —, 111 S.Ct. 1123, 113 L.Ed.2d 231 (1991) and as applied in *Turner v. Bass*, 753 F.2d 342, 351 (4th Cir.1985), reversed in part on other grounds, 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986), based upon the Supreme

Court's approval of such language. *Godfrey v. Georgia*, 446 U.S. 420, 422–23, 100 S.Ct. 1759, 1761–62, 64 L.Ed.2d 398 (1980); *Gregg v. Georgia*, 428 U.S. 153, 201, 96 S.Ct. 2909, 2938, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, and Stevens, JJ.). Jones, however, claims three constitutional deficiencies concerning the vileness aggravating factor as it was applied to him. His first argument calls attention to the portion of the statute, Va.Code Ann. 19-2-264.2, which states that vileness must involve "torture, depravity of mind or aggravated battery to the victim." He contends that because the jury's instructions and verdict forms contained a disjunctive formulation of these three limiting modifiers, there is no assurance that his sentencing jury reached a unanimous decision as to which component of vileness was presented by his crimes. Jones urges us to hold that this wording is an ambiguity which renders his sentence unconstitutional.

In *Coleman v. Thompson*, 895 F.2d 139 (4th Cir.1990), aff'd on other grounds, — U.S. —, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), we considered a similar argument from a petitioner who claimed that Virginia's death penalty statute had been unconstitutionally applied to him because the record did not indicate that the jury had unanimously found the existence of a statutory aggravating circumstance. Relying upon *Cabana v. Bullock*, 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986) and *Hildwin v. Florida*, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989), *Coleman* recognized that "the Constitution does not require a jury for the imposition of the death penalty." 895 F.2d at 146. If authorized by state law, "an appellate court can determine whether an aggravating factor has been proved and can impose the death penalty ... even when the jury may not have found an aggravating factor." *Coleman*,

---

7. The district court held that the remainder of Jones' claims were procedurally barred. The district court found that the state habeas court had dismissed these claims on well-recognized procedural default grounds. It further found that the Virginia Supreme Court had denied the petition for appeal with the statement that "the Court is of opinion that there is no reversible error in the judgment complained of." While

we think that the Virginia courts might well have intended to hold Jones' claims procedurally barred, we will address the merits of the claims to remove any question in this regard. See *Coleman v. Thompson*, — U.S. —, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Hildwin v. Florida*, 490 U.S. 638 n. *, 109 S.Ct. 2055 n. *, 104 L.Ed.2d 728 (1989).

895 F.2d at 146. Based on these principles, *Coleman* directed that a federal court's inquiry should not be confined to the jury instructions, but should "examine the entire course of the state court proceedings against the defendant in order to determine whether, at some point in the process, the requisite finding as to defendant's culpability has been made." *Coleman*, 895 F.2d at 146 (quoting *Cabana v. Bullock*, 474 U.S. at 387, 106 S.Ct. at 697).

In the present case, as in *Coleman*, the Virginia Supreme Court exercised the broad power conferred upon it by section 17–110.1 of the Virginia Code and conducted its automatic review of Jones' death sentence in a consolidated proceeding that also considered Jones' appeals. *Jones v. Commonwealth*, 228 Va. at 434–35, 323 S.E.2d at 567. It compared Jones' case to others "where the jury based a death penalty upon the vileness predicate" and independently determined that the evidence at Jones' trial was sufficient to support findings of aggravated battery and depravity of mind within the definitions established by its prior decisions. *Jones v. Commonwealth*, 228 Va. at 445–50, 323 S.E.2d at 564–567.

We are of opinion that Jones has not overcome the presumption of correctness to which such state court findings are entitled, see *Sumner v. Mata*, 449 U.S. at 546–47, 101 S.Ct. at 768–69, and conclude that the Virginia Supreme Court's review of Jones' sentence meets the constitutional requirements that Jones argues were left unsatisfied by the disjunctive phrasing of the jury's verdict. Specific findings authorizing the imposition of the death penalty have been made "in an adequate proceeding before [an] appropriate tribunal." *Cabana v. Bullock*, 474 U.S. at 392, 106 S.Ct. at 700.

 The second argument presented by Jones is that the Virginia Supreme Court failed to adopt any limiting construction of the vileness aggravating factor. The United States Supreme Court has held that aggravating circumstances based on vileness are unconstitutionally vague unless given some limiting construction. *Godfrey*

*v. Georgia*, 446 U.S. 420, 428–29, 100 S.Ct. 1759, 1764–65, 64 L.Ed.2d 398 (1980). We note that the Virginia Supreme Court has construed the vileness component so that it must include one of the three separate and distinct statutory elements of torture, depravity of mind, or aggravated battery. Proof of only one of these factors is sufficient to support a death sentence. *Bunch v. Commonwealth*, 225 Va. 423, 432, 304 S.E.2d 271, 282, cert. denied, 464 U.S. 977, 104 S.Ct. 414, 78 L.Ed.2d 352 (1983). The Virginia Court has also given additional limiting constructions to two elements of the vileness component. Aggravated battery has been defined as "a battery which, qualitatively and quantitatively, is more culpable than the minimum necessary to accomplish an act of murder." *Smith v. Commonwealth*, 219 Va. 455, 478, 248 S.E.2d 135, 149 (1978), cert. denied, 441 U.S. 967, 99 S.Ct. 2419, 60 L.Ed.2d 1074 (1979). Depravity of mind has been defined to mean "a degree of moral turpitude and psychical debasement surpassing that inherent in the definition of ordinary legal malice and premeditation." *Smith*, 219 Va. at 478, 248 S.E.2d at 149. We have previously recognized that the Virginia Supreme Court has thus provided a constitutionally limited construction of its vileness aggravating factor. *Boggs v. Bair*, 892 F.2d 1193, 1197 (4th Cir.1989), cert. denied, —— U.S. ——, 110 S.Ct. 2193, 109 L.Ed.2d 521 (1990); *Turner v. Bass*, 753 F.2d at 351–53.

We further hold that the Virginia Supreme Court properly applied this limited construction to the facts of Jones' case. The Court stated as follows:

Mrs. Adkins, an elderly, defenseless lady who had befriended the defendant, was a victim of a series of vicious assaults, only the last of which proved fatal. Her assailant tied her hands behind her back, stuffed a sock down her throat, taped her mouth and neck to hold the gag in place, forced her into a closet, shot her at point-blank range in the face, doused her clothing with an accelerant, struck a match, and left her, still alive and breathing, to die of smoke inhalation. Although the evidence does not show

whether or how long she remained conscious before she expired, it is reasonable to believe that the fire, which ultimately consumed one arm and most of both legs, could have caused her to suffer intense pain and terror for some period of time. *Jones*, 228 Va. at 447–48, 323 S.E.2d at 565. The Virginia Court found that evidence of these facts and circumstances supported a jury finding of aggravated battery and depravity of mind with regard to the murder of Mrs. Adkins.[8] In reaching this conclusion, the Court relied upon its limiting precedent of *Smith v. Commonwealth* and its decision in *Mason v. Commonwealth*, 219 Va. 1091, 254 S.E.2d 116, cert. denied, 444 U.S. 919, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979). *Mason* sustained a finding of vileness upon evidence that an elderly victim, following a vicious assault and rape had been "set on fire while still alive, although *in extremis.*" *Mason*, 219 Va. at 1099, 254 S.E.2d at 121. The Court in *Mason* found that torture and aggravated battery had been proven.

With regard to the murder of Mr. Adkins, the Virginia Supreme Court recognized that Mr. Adkins had died almost instantaneously, thereby avoiding the agonies of gradual incineration inflicted upon his wife, and noted that it had said in a prior decision following *Godfrey*, that " '[a] death sentence based upon vileness is not supported by the evidence where the victim dies almost instantaneously from a single gunshot wound.' " *Jones*, 228 Va. at 448, 323 S.E.2d at 566 (quoting *Peterson v. Commonwealth*, 225 Va. 289, 296, 302 S.E.2d 520, 525, cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983)). Cognizant of these strictures, the Court nonetheless found that the evidence concerning the murder of Mr. Adkins supported a jury finding that Jones' actions displayed depravity of mind. This conclusion was supported by prior decisions establishing that depravity of mind was a discrete underpin-

ning of Virginia's vileness standard capable of existing "independently of the presence of torture or aggravated battery." *Jones*, 228 Va. at 448–49, 323 S.E.2d at 565 (quoting *Bunch*, 225 Va. at 442, 304 S.E.2d at 282). The court then held that "an aggravated battery such as mutilation, gross disfigurement, or sexual assault committed upon a corpse or an unconscious body" evinced depravity of mind within the meaning of Virginia's death penalty statute.[9] *Jones*, 228 Va. at 448, 323 S.E.2d at 565. Reviewing the record before it, the court found that Jones had soaked the clothing of Mr. Adkins with accelerant and was prevented from burning the body only by "the chance intervention of a stranger." *Jones*, 228 Va. at 449, 323 S.E.2d at 566. The fact that Jones' effort to mutilate the body was not successful, the court stated, did not undermine its holding that the murder of Mr. Adkins involved conduct evincing depravity of mind.

Having considered the review conducted in this case, we reject Jones' contention that the Virginia Supreme Court was guilty of the practice, condemned in *Maynard v. Cartwright*, 486 U.S. 356, 363, 108 S.Ct. 1853, 1858, 100 L.Ed.2d 372 (1988), of deciding that a particularly shocking set of facts were sufficient in themselves, and without applying some narrowing principle, to warrant the imposition of the death penalty. We find that the Virginia Supreme Court has given a constitutionally limited construction to the vileness criterion and applied that limited construction to the facts of Jones' case.

As his third argument concerning the Virginia vileness factor, Jones contends that the instructions given the jury were unconstitutionally vague. As mentioned previously, the trial court instructed the jury concerning vileness by using the statutory language which describes vileness as conduct involving torture, depravity of mind, or aggravated battery. Jones

---

8. We also note that the trial court instructed the jury on the limiting definition of depravity of mind and aggravated battery.

9. The Virginia Supreme Court also observed that, under this construction of the term, the

evidence would be sufficient to establish depravity of mind with regard to the murder of Mrs. Adkins, even if Mrs. Adkins was unconscious before Jones set the fire. *Jones*, 228 Va. at 448, 323 S.E.2d at 565.

appears to argue that the term "depravity of mind" is facially unconstitutional because of vagueness. This contention is without merit. The Supreme Court in *Gregg* scrutinized this identical language within the even broader section which included the phrase and stated that "there is no reason to think that juries will not be able to understand it." *Gregg v. Georgia*, 428 U.S. at 202 n. 54, 96 S.Ct. at 2939 n. 54. We have specifically reached the same conclusion with regard to the Virginia vileness language. See, e.g., *Turner v. Bass*, 753 F.2d at 351. Jones also argues that the trial court's further explanation of depravity of mind as meaning "a degree of moral turpitude and psychical debasement surpassing that inherent in the definition of ordinary legal malice and premeditation" merely served to exacerbate the vagueness inherent in the term depravity of mind. We have previously recognized the language in question to be a "limiting construction" of the term depravity of mind, *Turner v. Bass*, 753 F.2d at 351, and do not agree with Jones' argument that it is "utterly unintelligible to the average juror." We therefore reject Jones' vagueness argument.

### III.

▮ Jones' final argument on appeal attacks the manner in which the jury instructions given at his trial dealt with mitigating circumstances.

He contends that the instructions at the penalty stage were in conflict with the Supreme Court's opinion in *Penry v. Lynaugh*, 492 U.S. 302, 328, 109 S.Ct. 2934, 2951, 106 L.Ed.2d 256 (1989), which stated that:

> In order to ensure 'reliability in the determination that death is the appropriate punishment in a specific case,' the jury must be able to consider and give effect to any mitigating evidence relevant to the defendant's background and charac-

ter, or the circumstances of the crime. (citation omitted).

The jury instruction in question told the jury that "[i]f you find from the evidence that the Commonwealth has proven beyond a reasonable doubt that the offense was outrageously or wantonly vile, horrible or inhuman then you may fix the punishment of the defendant at death or if you believe from all the evidence that the death penalty is not justified, then you shall fix the punishment of the defendant at life imprisonment." Jones argues that this instruction did not tell the jury to consider mitigating circumstances. He contends that from the instruction quoted above, the jury could well have inferred that if it found an aggravating factor, it had no option but to impose the death penalty without considering mitigating factors.

We have previously considered a quite similar claim involving a jury instruction almost identical to that now before us.[10] In *Briley v. Bass*, 750 F.2d 1238 (4th Cir. 1984), cert. denied, 470 U.S. 1088, 105 S.Ct. 1855, 85 L.Ed.2d 152 (1985), we considered the question of whether instructions given at the penalty stage of a trial were constitutionally flawed in that they failed to inform the jury of its option to recommend life imprisonment and its obligation to consider mitigating evidence. We found that the instructions presented no constitutional error.

Jones argues, however, that *Briley* does not foreclose his claim because the Supreme Court's intervening opinion in *Penry* requires us to depart from our prior decision. We cannot agree. The instruction given to the jury at the sentencing phase of Jones' trial cannot be said to have left a reasonable juror with the belief that there was no vehicle for expressing the view that Jones did not deserve to be sentenced to death, based upon his mitigating evidence. See *Penry*, 492 U.S. at 323, 324, 109 S.Ct.

---

**10.** In *Briley*, 750 F.2d at 1242, the court presented to the jury the two aggravating circumstances of future dangerousness and vileness. It then instructed the jury as follows:

> If you find from the evidence that the Commonwealth has proven beyond a reasonable

doubt either of the two alternatives, then you shall fix the punishment of the defendant at death; or if you believe from all the evidence that the death penalty is not justified, then you shall fix the punishment of the defendant at life imprisonment.

at 2948, 2949. Taken as a whole,[11] the instructions leave no doubt that the jury was free to consider mitigating evidence and recommend life imprisonment. The trial court, for example, and to repeat, explicitly charged the jury in the ultimate paragraph of the instruction on the sentence to impose:

> If you find from the evidence that the Commonwealth has proven beyond a reasonable doubt that the offense was outrageously or wantonly vile, horrible or inhuman, then you may fix the punishment of the defendant at death or if you believe from all the evidence that the death penalty is not justified, then you shall fix the punishment of the defendant at life imprisonment.

And in a separate instruction the trial court charged the jury:

> The Court instructs the Jury that even if you believe beyond a reasonable doubt that such facts and circumstances have been proven so as to permit the Death Penalty, it is still the prerogative of the Jury to decide whether death should be the punishment or not, and the Jury is under no obligation or compulsion to find the punishment should be death.

The term "all the evidence" necessarily includes the evidence in mitigation as well as that in aggravation. Furthermore, the statutory jury verdict form used by the jury stated that it had "considered the evidence in mitigation of the offense." We believe that, as in *Briley*, the instructions given to the jury "leave the definite impression that the jury was to take into account such evidence as was presented in mitigation and to exercise discretion in reaching a verdict on sentencing, rather than automatically imposing the death sentence upon finding an aggravating circumstance." *Briley*, 750 F.2d at 1244. This conclusion fully accords with *Penry*'s requirement that a jury must be able "to consider and give effect to any mitigating evidence relevant to a defendant's background and char-

acter, or the circumstances of the crime." 492 U.S. at 328, 109 S.Ct. at 2951; see *Boyde v. California*, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). By allowing the jury to consider all relevant mitigating evidence, the procedure by which Jones was sentenced satisfied the requirement of the Eighth and Fourteenth Amendments of individualized sentencing in capital cases. *Blystone v. Pennsylvania*, 494 U.S. 299, 306–08, 110 S.Ct. 1078, 1083–84, 108 L.Ed.2d 255 (1990); *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978).

While we grant the petitioner's request for a certificate of probable cause, see Fed. R.App.P. 22(b), the judgment of the district court is accordingly

AFFIRMED.

---

**11.** In reviewing jury instructions, we emphasize that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). We further note that "[t]he burden of demonstrating that an er-

roneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than a showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736–37, 52 L.Ed.2d 203 (1977).