JOURNAL ENTRY AND OPINION
Defendant-appellant, Wynyanna Winchester, appeals her convictions for aggravated robbery and burglary after a jury found her guilty of these offenses. For the reasons that follow, we affirm.
The evidence as offered by the State of Ohio reveals that, on June 26, 2000, three males and a female entered the home of Anthony Moon while he and a friend, Clarence Ransom, were playing a video game in Moon's bedroom. Moon's nine-year old son, Robert, was also home at the time and was likewise playing a video game in his bedroom located in the back of the house. At least two of the males carried guns and ordered Moon, who is a paraplegic and confined to a wheelchair, to lay down while ordering Ransom onto the floor. The female entered Robert's room and ordered him to go to the front of the house. En route, one of the males put a gun to Robert's head and likewise ordered him to the front of the house where he laid on the floor near his father and Ransom. Moon testified that these individuals demanded money and/or drugs. Moon was able to identify one of the males as David Clark, a neighbor who lived two houses down the street from him. He was able to identify the two remaining males as Otis Price and Edward Morrow. The female was only described as small and wearing a wig, a description confirmed by Robert's and Ransom's testimony.
At some point during this time, Moon's wife, Tonya, arrived home. After observing the scene in her husband's bedroom and at his direction, she laid on the floor near Ransom. She was able to definitively describe one male as Price and observe him going through her husband's things in his room. She testified that both males carried guns. Shortly thereafter and upon believing that these individuals had left the Moon home, Ransom and Robert fled the house while Tonya assisted Moon.
Ransom ran into Curtis Harris, a neighbor, and relayed the events that took place at Moon's house all the while describing the perpetrators. Harris testified that he had moments earlier seen individuals matching Ransom's description come from the area of Clark's house and walk in the direction of Moon's house. In fact, he testified that he walked past these individuals and was able to positively identify not only the males in the group but appellant as well. By this time, the police had arrived on the scene and, based on Harris's observations, were directed to Clark's house.
Upon entering the house, Clark was immediately apprehended. Morrow and appellant were found in the basement where police also found two guns, cell phones and a pager in a pile of dirty clothing near appellant and Morrow. A third gun was found in an unused refrigerator located in Clark's home while approximately eight hundred dollars was found in the attic near where Price was eventually found.
Price, Morrow and appellant were all indicted and tried together.[1] Appellant was charged with two counts of aggravated robbery, in violation of R.C. 2911.01, and one count of aggravated burglary, in violation of R.C. 2911.11. Each count carried firearm specifications. The case proceeded to trial where appellant testified in her own defense.[2] Appellant admitted being in the company of Clark, Price and Morrow and that she had been doing drugs before meeting them and then again while in their company. She further admitted that she entered Moon's house with Price and Morrow for the purpose of rectifying a purchase of bad drugs. She claimed not to have participated in the conversation and/or altercation that ensued between Moon and her companions. Instead, she testified that she fled Moon's house and went to Clark's house where she remained until Price and Morrow returned. She further testified that she had no encounter with Moon's son, Robert, nor did any of her companions carry weapons.
The jury eventually found appellant guilty of the aggravated robbery offenses but not the firearm specifications. While she was found not guilty of the aggravated burglary charge, nor the accompanying firearm specifications, she was found guilty of the lesser included offense of burglary. She was sentenced to three years imprisonment on each count of aggravated robbery and six months on the burglary charge, all to be served concurrently.[3]
Appellant is now before this court and assigns one error for our review. Succinctly, appellant claims that she was denied the effective assistance of counsel when trial counsel elicited prejudicial and incriminating testimony from her regarding her use of drugs.
In order to establish a claim of ineffective assistance of counsel, a criminal defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.Strickland v. Washington (1984), 466 U.S. 668; State v. Bradley (1989),42 Ohio St.3d 136, cert. denied (1990), 497 U.S. 1011. Prejudice is demonstrated when the defendant proves that, but for counsel's actions, there is a reasonable probability that the result of the proceedings would have been different. Strickland v. Washington, 466 U.S. at 694.
In considering such a claim, a reviewing court examines only whether trial counsel's conduct was reasonable "under prevailing professional norms," and in light of the circumstances. Id. at 697-688. Because it may be tempting to find an unsuccessful trial strategy to be unreasonable, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689.
 I.
Appellant first claims that her trial counsel pressured her to testify in her own defense and threatened to withdraw if she did not. She argues that trial counsel's conduct was without legal foundation and improperly influenced her decision regarding her constitutional right not to testify.
The advice provided by a criminal defense lawyer to his or her client regarding the decision to testify is "a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance." Hutchins v. Garrison (C.A.4, 1983), 724 F.2d 1425, 1436, cert. denied, 464 U.S. 1065, 79 L.Ed.2d 207, 104 S.Ct. 750 (1984); see, also, Jones v. Murray (C.A.4, 1991), 947 F.2d 1106, 1116, fn. 6. Nonetheless, a claim for ineffective assistance of counsel may be successful if it could be substantiated that the criminal defendant's decision whether to testify was the result of coercion. Lema v. UnitedStates (C.A.1, 1993), 987 F.2d 48, 52-53. Counsel's threats to withdraw have been held to constitute coercion sufficient to violate a criminal defendant's Sixth Amendment right to effective assistance of counsel.Nichols v. Butler (C.A.11, 1992), 953 F.2d 1550, 1553.
Our review of the record, however, does not support that appellant's decision to testify was the result of coercion. Counsel repeatedly stated that it was appellant's decision as to whether she would testify. There is nothing contained within the record that could be construed as a threat to withdraw if appellant refused to testify. It is true that counsel requested permission to withdraw on the two occasions that appellant stated on the record that either she was not going to testify or that she was undecided.
 * * * [A]t all times during the pendency of this matter, at all times that I represented to counsel, the Court and prosecutor and my indication with the jury, I've indicated that my client intended to testify.
 She had said she would. She had told me she would. * * * I've heard just previous to this time and today, some reluctance from her, indicating she may have some hesitancy in testifying. I've indicated to her, before we proceed any further in this case, based on my representations she's going to testify to the prosecutor and everybody else, what she has told me and authorized me to do prior to this time, if she had a change of heart about testifying, she's going to have to say so on the record in order to proceed.
 If she now, at this point, is telling anyone that she is not going to testify, I'm going to ask the Court to allow me to withdraw as counsel.
 At this point, I'd ask her to speak specifically to the Court and indicate whether or not she intends to proceed and testify as she has instructed me, as I've been indicating to everybody, including to the jury.
Finding that appellant's decision not to testify had no bearing on trial counsel's continued representation, the court would not permit counsel to withdraw. Appellant at this point stated on the record that she was unsure whether she would testify. Appellant stated later that day that she would not testify and counsel renewed his request to withdraw, which the court denied.
Trial proceeded and appellant eventually did testify. From the record before us, we can discern no reluctance on appellant's part immediately preceding or during her testimony. There was no inquiry as to why she decided to testify or any further discussion on the matter. Without more, we will not presume coercion merely because trial counsel made an earlier request to withdraw.
 II.
Appellant next claims that trial counsel elicited self-incriminating testimony regarding her drug use and that this testimony was unfairly prejudicial.
Defense counsel's trial strategy appeared to be premised on appellant's lack of knowledge regarding her co-defendants' interaction with Moon. It was appellant's position that she and her companions met with Moon, who appellant alleged was a drug dealer, in response to a sale of bad drugs. Counsel argued that, while appellant may have been a drug addict and in the company of these individuals just prior to entering Moon's house, she did not participate nor was otherwise involved in the ensuing altercation because she had left Moon's house by that time. It was an attempt to portray appellant as nothing more than a weak-willed individual who merely followed the direction of others because she was under the influence of drugs. By portraying her as such, it was anticipated that the jury would look favorably upon her, especially when considering her lack of a criminal record.
While it may have not been necessary to go into the detail that trial counsel did with regards to appellant's knowledge of different kinds of drugs and how they are ingested, we cannot say that counsel's decision to have appellant testify as to her drug habit was less than sound trial strategy. It fit counsel's theory of the case and, if believed by the jury, could have been her means of avoiding conviction. In hindsight, we know now that that did not occur, but we cannot let that distort our review of appellant's ineffective assistance of counsel claim. See Strickland v. Washington, 466 U.S. at 689.
Nor can we say that the outcome of trial would have been different had appellant not testified. Moon, his son, Robert, and Ransom all testified that a small female with a wig entered the Moon house. Appellant's short stature is a unique feature of her appearance and one not likely to be easily forgotten. Robert testified that a female matching her description approached him and ordered him to the front of the house. Harris observed appellant in the company of Clark, Price and Morrow walking in the direction of Moon's house and later directed police to the Clark house where he had seen them earlier depart. Appellant was found in the Clark house basement surrounded by weapons and other property belonging to Moon or Ransom. With this evidence before the jury, albeit circumstantial, it cannot be said that the outcome of trial would have been different even in the absence of appellant's testimony. Consequently, we find nothing in the record to support that appellant was denied her Sixth Amendment right to effective assistance of counsel. Her sole assignment of error is not well taken and is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J. and MICHAEL J. CORRIGAN, J., CONCUR
[1] Clark apparently was likewise charged but appears to have fled the jurisdiction of the court.
[2] Price and Morrow did not testify.
[3] Price and Morrow were likewise found guilty and sentenced accordingly.