UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

RICHARD ALVIN COTHRAN,
            *Petitioner-Appellant,*

v.

GLEN F. TURNER, Warden,
Lawrenceville Correctional Center,
            *Respondent-Appellee.*

No. 03-6629

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-02-161-3)

Argued: February 24, 2004

Decided: June 8, 2004

Before WILKINS, Chief Judge, and WIDENER and
SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Barbara Lynn Hartung, Richmond, Virginia, for Appellant. Amy L. Marshall, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee. **ON BRIEF:** Jerry W. Kilgore, Attorney General of Virginia, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Richard Alvin Cothran appeals the denial of his application for a writ of habeas corpus. *See* 28 U.S.C.A. § 2254 (West 1994 & Supp. 2003). The district court granted Cothran a certificate of appealability with respect to specified claims alleging suppression of exculpatory evidence and ineffective assistance of counsel. Upon consideration of those claims, we affirm the denial of relief.

### I.  *Facts*

On September 29, 1996, Cothran shot and killed Todd Gouldine. The killing occurred in Cothran's home, in front of two eyewitnesses —Arlene White (Cothran's girlfriend), and Elizabeth Brooks (Gouldine's girlfriend).

Cothran was charged in Virginia state court with murder. At trial, Brooks testified that she was watching television while Cothran and Gouldine talked and drank, and she heard a shot. She then turned and saw Cothran fire a second shot, which hit Gouldine in the head; Brooks testified that as Cothran fired the shot, he said, "M— f—, you're dead." J.A. 227 (internal quotation marks omitted).

For his part, Cothran claimed that the shooting was an accident. He testified that Gouldine became belligerent after drinking too much, so Cothran picked up his pistol to prevent Gouldine from using it. There was a struggle, and Cothran fired a warning shot. After that, Gouldine started to leave, but then he turned and tried to grab Cothran's gun, which went off and shot Gouldine in the head. When cross-examined about the contradictions between this story and the physical evidence, Cothran claimed that the coroner was "coached." *Id.* at 410.

Cothran was convicted of second degree murder. After four unsuccessful challenges in state court (two motions for new trial, an appeal,

and a habeas petition), Cothran filed a habeas application in federal court. The district court denied relief but granted a certificate of appealability as to certain claims.

## II.  *Failure to Disclose Exculpatory Evidence*

Cothran first contends that the prosecution improperly withheld statements that Brooks made to the police, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. We disagree.

The statements in question did not directly support Cothran's defense, but they included two items that could have been used for impeachment. First, a police officer said that Brooks had told him—immediately after the shooting and while still in great distress—that Cothran had shot Gouldine with a shotgun; in fact, Cothran had used a pistol. (Shortly after the shooting, Cothran locked himself in his bathroom with a shotgun and said he was going to kill himself to avoid being imprisoned for shooting Gouldine.) The state court held that this statement had minimal impeachment value, and thus did not constitute material exculpatory evidence subject to disclosure under *Brady*, because (a) there was no dispute at trial about what weapon Cothran used; (b) Brooks denied having called the weapon a shotgun (suggesting that the officer may have recorded the statement incorrectly); and (c) if Brooks did err in describing the gun, this was understandable in light of her emotional state. Because this determination was not unreasonable, Cothran is not entitled to habeas relief. *See* 28 U.S.C.A. § 2254(d)(1).

The second set of relevant items from Brooks' statements included her repeated assertions that Cothran and Gouldine had not argued prior to the shooting and that "there was nothing that was said," J.A. 157. At Cothran's preliminary hearing, however, Brooks testified that Cothran had said "you're dead" before firing the second shot, *id.* at 174 (internal quotation marks omitted); then, at trial, Brooks quoted Cothran as saying "M— f—, you're dead," *id.* at 227 (internal quotation marks omitted). The district court found that these statements had no impeachment value because Brooks' statement that there was no argument prior to the *first* shot was not inconsistent with her testimony that Cothran said "you're dead" prior to the *second* shot. Cothran claims that "there is no factual support for the district court's

scenario," Br. of Appellant Richard Alvin Cothran at 30, but in fact
Brooks' testimony directly supports the analysis by the district court:

> Q.   Did you hear Mr. Cothran say anything before the
> first shot?
>
> A.   Well, before the first shot they were laughing and
> carrying on, and that's when I heard the gun go off the first
> time. And then the second time yeah, he said ["M— f—,
> you're dead"].

J.A. 227. We therefore affirm the denial of relief on this claim.

### III.   *Ineffective Assistance of Counsel*

Cothran next contends that his trial attorney (Haskins) provided
ineffective assistance by (a) conducting an inadequate investigation
concerning Elizabeth Brooks and cross-examining her deficiently,
(b) failing to interview Sherri-Anne Priest and call her as a witness,
and (c) failing to call Arlene White as a witness. To establish that he
received ineffective assistance of counsel, Cothran must make two
showings: "First, [he] must show that counsel's performance was
deficient. . . . Second, [he] must show that the deficient performance
prejudiced [his] defense." *Strickland v. Washington*, 466 U.S. 668,
687 (1984).

### A.

Cothran claims that if Haskins had conducted an adequate investi-
gation regarding Brooks, he would have discovered evidence useful
for impeachment. During state habeas proceedings, Brooks provided
an affidavit averring that, had Haskins interviewed her, she would
have told him that she did not remember the shooting incident clearly.
She allegedly made the same disclosure before trial in a statement to
the police and in conversation with Sherri-Anne Priest. Cothran
asserts that Haskins was unable to impeach Brooks' testimony effec-
tively because he failed to review Brooks' statement, failed to inter-
view Brooks, and failed to interview and/or subpoena Priest. We will
address Cothran's claim concerning Priest in Part III.B, *infra*. As to

the balance of this claim, we hold that the decision of the state habeas court was not unreasonable and that Cothran therefore is not entitled to relief. *See* 28 U.S.C.A. § 2254(d)(1).

The state habeas court denied relief on this claim based on arguments advanced by the Commonwealth. As noted in these arguments, Brooks admitted at trial that she had taken medication that made her less alert at the time of the shooting, but she also denied having told Cothran that she did not remember the incident clearly. Also, she provided fully consistent descriptions of the inculpatory details of the shooting when she was interviewed by the police, when she testified at a pre-trial hearing, and when she testified during trial. Under the circumstances, it is not likely that Brooks would have told Haskins— before or during trial—that her memory of the relevant events was impaired, nor is it likely that such a declaration would have rendered her testimony less credible. Accordingly, the state court could reasonably conclude that Haskins' performance, even if deficient, did not result in prejudice.

B.

We now turn to Cothran's claim regarding Priest, a close friend of Brooks. At a hearing after Cothran's trial, Priest testified that Brooks had said she did not remember the shooting incident clearly, once in a conversation with Priest and once in a conversation with Cothran that Priest observed. Cothran claims that Haskins performed deficiently in failing to obtain this information before trial by interviewing Priest.

In rejecting this same claim, the state habeas court relied on the Commonwealth's argument that Haskins attempted to interview Priest but she refused to cooperate. If Priest refused to discuss the case with Haskins before trial (as she admitted when she testified after trial), then Haskins' failure to interview Priest did not amount to deficient performance. *See Duckett v. Mullin*, 306 F.3d 982, 998 (10th Cir. 2002) ("It would be unreasonable to deem trial counsel ineffective for failing to discover potential mitigating evidence when counsel conducted a reasonable investigation but was stymied by potential witnesses who were not forthcoming."), *cert. denied*, 538 U.S. 1004 (2003). Furthermore, although Haskins could still have obtained

Priest's testimony by subpoenaing her, his decision not to do so when he could not confirm what her testimony would be was well within the bounds of competent representation, particularly in light of her hostile attitude. *See Jones v. Murray*, 947 F.2d 1106, 1113 (4th Cir. 1991) (holding that counsel did not perform deficiently in declining to call a witness who was likely to present "a cool and reserved demeanor" while testifying). Accordingly, the state court decision denying relief on this claim was not unreasonable.

## C.

Finally, Cothran claims that Haskins should have called Arlene White as a witness. As noted above, White was dating Cothran when the shooting occurred (they have since married and divorced), and she was present at the time of the shooting. Haskins chose not to use her as a witness because she had a criminal record; he felt that her convictions could be used to undermine her credibility and tarnish Cothran by association. The state court concluded that this was a reasonable basis for declining to use White's testimony. This conclusion was not unreasonable.

Cothran emphasizes that Haskins mistakenly believed that White could be questioned about the details of her offenses. But even without that mistake, Haskins could reasonably have opted not to call White as a witness. Moreover, the failure to use her testimony was not prejudicial, as she would have lacked credibility in light of her relationship with Cothran and her acknowledged efforts to conform her testimony to his statements. Cothran therefore is not entitled to relief on this claim.

## IV.

For the foregoing reasons, we affirm the denial of habeas relief.

*AFFIRMED*