Sharone Jermaine **BERRY**, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

Criminal No. 4:08cr43.
Civil Action No. 4:11cv145.

United States District Court,
E.D. Virginia,
Newport News Division.

July 29, 2012.

Laura Pellatiro Tayman, United States Attorney Office, Brian James Samuels, United States Attorney's Office, Newport News, VA, for Respondent.

## *ORDER*

ROBERT G. DOUMAR, District Judge.

This matter is before the Court upon Petitioner Sharone Jermaine Berry's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody ("Motion to Vacate"), pursuant to 28 U.S.C. § 2255.[1] Petitioner seeks relief on four independent bases: (1) his counsel was ineffective for failing to object to this Court's questioning of Petitioner during trial or to appeal this issue; (2) his counsel was ineffective at sentencing for failing to request a lesser-included instruction on simple possession; (3) his counsel was ineffective for failing to investigate and present to the Court Petitioner's history of mental illness; and (4) his counsel was ineffective pursuant to the Supreme Court's recent decision in *Lafler v. Cooper*, — U.S. ——, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012). Based on these alleged violations of his rights, Petitioner asks the Court to vacate the sentence imposed upon him on October 6, 2010. The matter has been fully briefed and is now ripe for decision. For the reasons stated herein, Petitioner's Motion to Vacate is **DENIED**.

## I. PROCEDURAL HISTORY

On April 16, 2008, a federal grand jury sitting in Newport News, Virginia, returned a four count indictment against Petitioner, charging him with possession with intent to distribute cocaine base (Count One), identification theft (Count Two),

false representation of a social security number (Count Three), and aggravated identity theft (Count Four). Thereafter, on July 16, 2008, Petitioner was named in a superseding indictment, charging him with possession with intent to distribute cocaine base within 1000 feet of school property (Count One), identification theft (Counts Two and Five), false representation of a social security number (Counts Three and Six), and aggravated identity theft (Counts Four and Seven). At all times relevant to this motion, Petitioner was represented by Assistant Federal Public Defender Keith Kimball.

On June 20, 2008, Petitioner, through counsel, moved to suppress the crack cocaine recovered during Petitioner's encounter with police on December 13, 2006. Petitioner also sought to suppress statements he made during this encounter. The Court held a hearing on the motion, at which Petitioner testified. Following the filing, at the Court's request, of supplemental briefing on the issue of probable cause, the Court denied Petitioner's motion to suppress. The case then proceeded to trial.

Following a three-day jury trial, on September 11, 2008, the jury returned a verdict of guilty on Counts One, Two, Three, Five, Six, and Seven. On September 24, 2008 Petitioner filed a motion for judgment of acquittal, which the Court denied on October 30, 2008. On March 17, 2009, the Court, taking into consideration Petitioner's designation as a career offender under the United States Sentencing Guidelines, sentenced Petitioner to 262 months on

---

1. On October 6, 2011, Petitioner filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. On January 10, 2012, the Court granted Petitioner's motions for additional time to supplement his motion, giving Petitioner 45 days to supplement his petition, and ordering the government to respond within sixty (60) days. On February 27, 2012, Petitioner filed a supplemental brief.

Count One, with concurrent sentences on Counts Two, Three, Five, and Six, and a consecutive term of 24 months on Count Seven. Petitioner timely filed an appeal with the Fourth Circuit.

In an unpublished opinion, the Fourth Circuit affirmed the judgment of this Court with respect to the motion to suppress and with respect to Petitioner's sentence on Count One. However, the Court vacated Petitioner's conviction on the aggravated identity theft charge, pursuant to *Flores–Figueroa v. United States*, 556 U.S. 646, 129 S.Ct. 1886, 173 L.Ed.2d 853 (2009), which was decided after Petitioner's conviction and sentencing. On October 6, 2010, this Court resentenced Petitioner, and imposed a term of 262 months imprisonment on Count One, with concurrent sentences on the remaining counts. The Court vacated Petitioner's 24 month sentence for aggravated identity theft.

On October 6, 2011, Petitioner filed the instant motion to vacate. On December 5, 2011, and January 9, 2011, Petitioner filed motions for enlargement of time to file supplemental briefs in support of his motion, which this Court granted. On February 27, 2012, Petitioner filed a supplemental brief in support of his motion to vacate. On May 3, 2012, Petitioner filed a second supplemental brief, raising a claim pursuant to the Supreme Court's recent decision in *Lafler v. Cooper*, —— U.S. ——, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012).

## II. LEGAL STANDARD

Collateral review created by 28 U.S.C. § 2255 allows a prisoner in federal custody to challenge the legality of a federal sentence on four grounds: (i) the sentence was imposed in violation of the Constitution or laws of the United States, (ii) the sentencing Court lacked jurisdiction, (iii) the sentence imposed was in excess of the maximum amount authorized by law,

or (iv) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255. The Supreme Court has held that § 2255 is the appropriate vehicle by which a federal prisoner may challenge both the fact of conviction itself and the terms of a postconviction sentence. *Davis v. United States*, 417 U.S. 333, 343–44, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974). When seeking relief under § 2255, a petitioner "bears the burden of proving his grounds for collateral attack by a preponderance of the evidence." *Hall v. United States*, 30 F.Supp.2d 883, 889 (E.D.Va.1998) (citing *Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir.1967) and *Miller v. United States*, 261 F.2d 546, 547 (4th Cir.1958)).

Section 2255 provides that, "[u]nless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney [and] grant a prompt hearing thereon...." 28 U.S.C. § 2255. Thus, as a corollary, a court may dismiss a § 2255 motion if it is clearly inadequate on its face and if the petitioner would not be entitled to relief assuming the facts alleged in the motion are true. Where the record refutes a petitioner's factual allegations, dismissal is appropriate. Likewise, if the motion can be resolved exclusively on issues of law, and no questions of fact exist, then summary dismissal is appropriate without an evidentiary hearing. *See Green v. United States*, 65 F.3d 546, 548–49 (6th Cir.1995) (finding that an evidentiary hearing was unnecessary because all claims by petitioner alleged legal errors).

A *pro se* petitioner is entitled to have his petition and asserted issues construed liberally, and is held to less stringent standards than an attorney drafting such documents. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4 Cir.1978), *cert. denied,*

439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978).

## III. ANALYSIS

### A. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the outcome of the case. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To satisfy the first prong of the test set forth in *Strickland,* a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. Importantly, counsel is entitled to a "strong presumption" that his strategy and tactics fell "within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052. With respect to the prejudice prong of the *Strickland* test, a petitioner must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. A "reasonable probability" is one sufficient to undermine confidence in the outcome. *Id.* A petitioner's failure to satisfy either of the two prongs renders it unnecessary for the court to consider the other requirement. *Williams v. Kelly,* 816 F.2d 939, 946–47 (4th Cir.1987). The burden is on the petitioner to identify specific "acts or omissions of counsel" which were unreasonable and prejudicial. *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052.

### 1. Counsel's Failure to Appeal the District Court's Questioning of Petitioner at Trial

Petitioner first argues that Mr. Kimball's failure to object to this Court's questioning of Petitioner during trial or to argue this issue on appeal amounted to ineffective assistance of counsel. Specifically, Petitioner points to the following questions and comments made by the Court during Petitioner's testimony in the presence of the jury: (1) the Court's question to Petitioner whether he had sold drugs during the past six years before the specific incident in question; (2) the Court's question, "from December until August what were you doing, selling drugs?"; (3) the Court's comment, "at the time I understand you were using drugs daily; is that correct?" to which Petitioner responded, "No, sir"; and (4) the Courts line of questioning of Petitioner as to who was his supplier of drugs. (Trial Tr. p. 371–74.) Petitioner claims that the Court overstepped the boundaries of Federal Rule of Evidence 614(b) in questioning Petitioner in this manner.

Federal Rule of Evidence 614(b) provides that "[t]he court may examine a witness regardless of who calls the witness." Fed. R. Evidence 614(b). The Fourth Circuit has interpreted this rule liberally, and has demonstrated consistent deference to a trial court's need to bring order and clarity to courtroom proceedings. *See, e.g., United States v. Godwin,* 272 F.3d 659, 672–80 (4th Cir.2001). In *Godwin,* the defendants claimed on appeal that they had been denied a fair trial due to the judge's "extensive involvement in the questioning of witnesses and by the prosecutorial role they claim[ed] the trial judge assumed." *Id.* at 671–72. The Fourth Circuit noted that "[t]ime and again, the [trial] court engaged in active questioning unfavorable to the defense." *Id.* at 675. The Fourth Circuit also instructed that, "[n]otwithstanding the broad discretion accorded trial judges, we have repeatedly observed that a judge has no 'impregnable cloak of immunity,'" and that it "is far better for the trial judge to err on the side of [a]bstention from intervention in the

case rather than on the side of active participation in it, especially when the major part, if not all of his interruptions and interventions, though by chance rather than by design, are, or seem to be on, or tending to be on, the side of the government." *Id.* at 676–77 (internal citations omitted). Nonetheless, the Fourth Circuit upheld the defendants' convictions, noting that the "ultimate concern" is whether the trial judge's actions were so prejudicial as to deny the party an opportunity for a fair and impartial trial. *Id.* at 678. Because the evidence against the defendants in *Godwin* was so overwhelming, and because the defendants had failed to produce any evidence to corroborate their theory of the case, the prejudicial effect of the judge's comments was nil. *Id.* at 680–81 (the defense was "predestine to failure").

█ So too here. The evidence against Petitioner was overwhelming. Thus, there is very little likelihood that the Court's comments caused any prejudice to Petitioner. Moreover, any potential prejudice caused by the Court's remarks was cured by the cautionary instruction read to the jury prior to its deliberations:

> During the course of the trial I occasionally ask questions of a witness in order to bring out facts on issues that may have to be determined by me or to bring forth information that I feel has not been fully covered in the testimony. Do not assume that I hold any opinion on the matters to which my questions may have related. Whatever you think my opinion is or may be is not to be considered by you. It is not my province to judge the guilt or innocence of the defendant, it's yours. Remember at all times that as jurors, you are at liberty to disregard any comments of the court concerning the facts of the case.

█ (Trial Tr., p. 453.) Finally, although defense counsel did not object dur-ing the Court's questioning of Petitioner, immediately after the Court had finished its line of questioning, counsel requested a sidebar and requested of the Court, "at a minimum I would ask the court to give some sort of limiting instruction to the jury that the fact that he had been in jail before should have no bearing on whether or not he committed the offenses that he's charged with." (Trial Tr. 377.) Given the well-established law in this area, counsel's request for a limiting instruction was sufficient, and his decision not to raise this issue on appeal cannot be considered ineffective assistance of counsel.

### 2. Counsel's Failure to Request a Lesser–Included Instruction on Simple Possession

Petitioner next contends that Mr. Kimball's failure to request a lesser-included offense instruction constituted ineffective assistance of counsel. (Mot. Vacate, 5.) Petitioner argues that, had Mr. Kimball urged the Court to include a lesser-included offense instruction as to simple possession, "the jury could have chosen a more palatable alternative" to conviction of possession with intent to distribute. Petitioner further states that his possession of 4.38 grams of cocaine base could have been for personal use, and that there was no evidence that he intended to sell the cocaine base. (Mot. Vacate 5–6.)

█ record wholly refutes Petitioner's argument. The evidence presented at trial was that Petitioner dropped, in the presence of a law enforcement witness, thirty-six individually wrapped pieces of cocaine base. The government presented an expert witness who testified that the quantity recovered from Petitioner revealed intent to distribute. Thus, as there was more than sufficient evidence to sustain a conviction for possession with intent to distribute, and there was no affirmative

**460**

evidence that the drugs were for personal use, any request for a lesser-included instruction would have been frivolous. *Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988) ("As a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor"); *United States v. Wright,* 131 F.3d 1111, 1113 (4th Cir.1997) (trial court not required to instruct on simple possession in case involving 3.25 grams of cocaine base where defense presented no evidence challenging the government's evidence relating to defendant's intent with respect to the drugs in question). Moreover, a lesser-included instruction would have run directly counter to Petitioner's theory of the case at trial, which was that Petitioner never possessed the cocaine base at all. Accordingly, Petitioner has failed to demonstrate that Mr. Kimball's failure to request a lesser-included offense instruction demonstrated deficient performance, or that it prejudiced the outcome of Petitioner's case.

### 3. Counsel's Alleged Failure to Present a Mental Capacity Defense or Mitigation Case

Petitioner next claims that Mr. Kimball provided ineffective assistance when he failed to raise Petitioner's mental capacity issues at the time of sentencing. As Petitioner states, "[n]owhere in the record can it be found that counsel raised these [mental capacity] issues or attempted to have Petitioner evaluated concerning Petitioner's mental health." (Mot. Vacate, 4.) Petitioner argues that his history of ADHD, adjustment disorder, and bipolar disorder should have been investigated through a mental health evaluation and presented to the Court at the time of sentencing or before. To support this claim, Petitioner has provided a letter from Wayne Martin,

L.C.S.W., indicating that Petitioner suffered from trauma as a child when his brother was murdered, and that he appears to suffer from a variety of mental health issues.

However, contrary to Petitioner's assertions, the Pre–Sentence Report ("PSR") develops Petitioner's personal background and mental health issues at some length. Mr. Kimball also noted these issues in his lengthy position paper filed in anticipation of sentencing. (Docket No..65.) Indeed, in that position paper, Mr. Kimball noted that Petitioner "had a horrible childhood," that he was raised in a poor neighborhood and exposed to violence from a young age, that he has never had a positive male influence in his young life, that his mother's drug addiction caused Petitioner to be homeless during his adolescence, and that Petitioner has only a ninth grade education. Mr. Kimball noted that Petitioner "had little to no chance of 'making it.'" Finally, Mr. Kimball noted that Petitioner has a history of emotional and behavioral problems dating back to his childhood, referring to ¶ 42 of the PSR. The Court thus had ample opportunity, both through the PSR and through Mr. Kimball's position paper, to consider Petitioner's history of mental and emotional deficiencies in fashioning an appropriate sentence.

■ Moreover, the Sentencing Guidelines counsel that a downward departure may be warranted in the case of a defendant with low mental capacity only where the defendant committed the offense while suffering from a "significantly reduced" mental capacity. U.S.S.G. § 5K2.13. The Fourth Circuit has interpreted this narrowly, holding as follows:

> [T]he Sentencing Commission has concluded that a defendant's mental or emotional condition is 'not ordinarily relevant in determining whether a sentence

should be outside the applicable guideline range.' ... Judged against this background, we a agree with the other courts of appeals that have addressed this issue that in order for a defendant's mental condition to be considered "a significantly reduced mental capacity" within the meaning of § 5K2.13, p.s., the defendant must have been unable to process information or to reason.

*United States v. Goossens,* 84 F.3d 697, 700–01 (4th Cir.1996). Petitioner has provided no evidence to show that his mental capacity at the time he committed the offenses in question was so severely reduced as to satisfy this standard. Accordingly, as Petitioner has failed to identify any unreasonable "acts or omissions of counsel," with respect to his claims relating to mental capacity, this claim must fail.

### 4. Counsel's Alleged Faulty Advice that Purportedly Led Petitioner to Forego a Guilty Plea and Proceed to Trial

Petitioner's final claim is that Mr. Kimball led him "down a road of false hope, false impressions and bad advice," which ultimately caused Petitioner to forego a guilty plea and instead proceed to trial. (Req. for Leave to Supp. Original Mot. Vacate, 10.) In sum, Petitioner argues that Mr. Kimball gave Petitioner false hope about his chances of succeeding at trial, and that, based on the strength of the government's evidence, Mr. Kimball should have predicted that Petitioner would be convicted following a trial. (*Id.* at 10–11.) Petitioner relies on the recent Supreme Court decision in *Lafler v. Cooper,* —— U.S. ——, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), to support his claim that Mr. Kimball's allegedly faulty advice with respect to the strength of Petitioner's defense

amounted to ineffective assistance of counsel.

■ *Lafler* and its companion case, *Missouri v. Frye,* —— U.S. ——, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012), were decided on March 21, 2012, more than five months after Petitioner filed his original motion to vacate, and more than three years after the case was tried. Under the framework set forth in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), new constitutional rules of criminal procedure are generally inapplicable to convictions that became final before the rule was announced. Petitioner's conviction became final on October 22, 2010, after a successful appeal of his aggravated identity theft conviction, and re-sentencing on October 6, 2010.[2] The *Teague* retroactivity bar is subject to two narrow exceptions: (1) where a new rule "places a class of private conduct beyond the power of the State to proscribe" or addresses "a 'substantive categorical guarante[e] accorded by the Constitution' " and (2) where the new rule is a "watershed rule of criminal procedure," which implicates fundamental fairness and accuracy with respect to the underlying criminal proceeding. *Saffle v. Parks,* 494 U.S. 484, 494–95, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) (citing *Teague,* 489 U.S. at 311, 109 S.Ct. 1060). Neither of these exceptions applies here.

■ Notably, *Teague's* procedural bar applies only where the Supreme Court has announced a "new rule." Thus, the question of whether Petitioner may now raise a *Lafler*-based claim on collateral review turns on whether the holding of *Lafler* announces a "new rule" within the meaning of *Teague. Teague,* 489 U.S. at 301, 109 S.Ct. 1060. The Supreme Court recognized in *Teague* that "[i]t is admittedly often difficult to determine when a case

---

**2.** The amended judgment was filed on October 12, 2010, and no appeal was filed.

announces a new rule." *Id.* For that reason, the Supreme Court declined to "define the spectrum of what may or may not constitute a new rule for retroactivity purposes." *Id.* However, the Supreme Court has clarified that a rule is new unless it was "*dictated* by precedent—*i.e.,* whether *no other* interpretation was reasonable." *Lambrix v. Singletary,* 520 U.S. 518, 538, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997). In determining whether a rule is "susceptible to debate among reasonable minds," the Supreme Court has counseled that relevant considerations include whether the decision announcing the new rule at issue purported to rely on "controlling precedent," *Lambrix,* 520 U.S. at 528, 117 S.Ct. 1517, whether there was "a difference of opinion on the part of ... lower courts that had considered the question," *Butler v. McKellar,* 494 U.S. 407, 415, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990), and whether the Justices themselves expressed an "array of views," *O'Dell v. Netherland,* 521 U.S. 151, 159, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997).

In *Lafler* and *Frye,* the Supreme Court held that where defense counsel's faulty advice causes a defendant to reject a plea bargain and proceed to trial, a defendant can prevail on a claim of ineffective assistance where he can show that, but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in facts were imposed.

*Lafler,* 132 S.Ct. at 1385. The Supreme Court did not address the question of ret-

roactivity in either *Lafler* or *Frye,* nor did the Court expound upon whether the principles it announced where "new" for the purposes of *Teague.*

In its response to Petitioner's supplemental § 2255 motion, the government argues that the holdings in *Lafler* and *Frye* "are more than an application of *Strickland's* standard for ineffective assistance of counsel to a new factual scenario." (Govt. Resp. to Pet.'s Supp. Br., 4.) In support of this argument, the government notes the "array of views" expressed by the four Justices who dissented in both cases. Indeed, in his dissent in *Lafler,* Justice Scalia describes the Court's majority opinion as "open[ing] a whole new field of constitutionalized criminal procedure: plea-bargaining law." *Lafler,* 132 S.Ct. at 1391 (Scalia, J., dissenting). The majority observed that its holdings in *Lafler* and *Frye* followed from *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), and *Padilla v. Kentucky,* 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), which hold, respectively, that defendants are generally entitled to effective assistance of counsel in considering whether to plead guilty, and that failure to advise a defendant regarding deportation as a possible collateral consequence of a guilty plea may constitute ineffective assistance of counsel. However, the government argues that these decisions are supporting authority, rather than controlling precedent. The Court agrees.

Although *Hill* and its progeny provided some foundation for the Court's decisions in *Lafler* and *Frye,* it did not *dictate* the result in these cases, nor did it foreclose all possibility of an alternative decision. *See, e.g., United States v. Shahzad Mathur,* 685 F.3d 396 (4th Cir.2012) (*Padilla* is not retroactively applicable to cases on collateral review); *Chaidez v. United States,* 655 F.3d.684, 694 (7th Cir.2011)

(holding that *Padilla* announced a new non-retroactive rule under *Teague*). Thus, *Teague's* procedural bar applies, and Petitioner's claim is not cognizable on collateral review.

 Moreover, even if the Court were to consider Petitioner's *Lafler* claim on the merits, the claim would fail. There is nothing in the record to suggest that Petitioner ever intended to plead guilty to the offenses with which he was charged. Petitioner admits in his sworn affidavit that the government's plea offer was communicated to him "on or before the last week in August." This was substantially before his September 2011 trial. Petitioner does not allege that Mr. Kimball failed to communicate the government's plea offer. Rather, he alleges that Mr. Kimball gave him bad advice in counseling him to proceed to trial. That Petitioner testified at trial and maintained his innocence under oath also cuts against his *Lafler* argument. As multiple courts have recognized, "after the fact testimony concerning [a defendant's] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir.1991) (citing *Johnson v. Duckworth*, 793 F.2d 898 at 902, n. 3 (7th Cir.1986)).

Thus, we find that Petitioner has failed to make the necessary showing that, but for counsel's allegedly faulty advice, he would have pled guilty rather than go to trial. *Lafler*, 566 U.S. ——, 132 S.Ct. at 1385. Petitioner has failed to demonstrate either that counsel failed to accurately advise him regarding his potential sentence or that such alleged failure prejudiced the outcome of his case.

## IV. CONCLUSION

Because the record conclusively demonstrates that Petitioner is entitled to no relief, the Court declines to hold a hearing in this matter. *See* 28 U.S.C. § 2255(b) (stating that the Court must grant a prompt hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"). Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has conducted a thorough review of all filings in this matter, the records of prior proceedings, and all other materials in Petitioner's file, and the Court finds that an evidentiary hearing is not warranted.

For the foregoing reasons, Petitioner's Motion pursuant to 28 U.S.C. § 2255 is hereby **DENIED**. Petitioner is **ADVISED** that he may appeal from this final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within sixty (60) days from the date of this Order. For the reasons stated herein, the Court, pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, declines to issue a certificate of appealability. The Clerk is **DIRECTED** to deliver a copy of this Order to Petitioner and to the United States Attorney's Office.

It is so **ORDERED**.