Santos CARILLO–MORALES,
Petitioner,

v.

UNITED STATES of America,
Respondent.

Criminal No. 1:07–cr–00081 (GBL).

United States District Court,
E.D. Virginia,
Alexandria Division.

July 8, 2013.

798

David Walter Tooker, United States Attorney's Office, Alexandria, VA, for Respondent.

Aaron Samuel Book, Webster Book LLP, Alexandria, VA, for Petitioner.

## MEMORANDUM OPINION AND ORDER

GERALD BRUCE LEE, District Judge.

THIS MATTER is before the Court on Petitioner Santos Carillo–Morales's ("Peti-

tioner") Petition to Vacate, Set Aside or Correct his Sentence Pursuant to 28 U.S.C. § 2255 (2012). (Doc. 246.) This case concerns Petitioner's interaction with his attorney prior to plea negotiations before he was convicted for conspiracy to commit murder and aggravated assault in aid of racketeering. Contrary to the advice of his counsel, Petitioner rejected the government's plea offer, proceeded to trial where he was convicted, and received a sentence twice as severe as what he would have received with a guilty plea.

The issue before the Court is whether Petitioner is entitled to relief under § 2255 for ineffective assistance of counsel where Petitioner refused to accept the government's plea offer because he was not convinced by counsel that he would be convicted at trial. The Court holds that Petitioner's counsel rendered constitutionally effective assistance, finding that counsel exhibited reasonable conduct by repeatedly explaining the applicable theory of liability and the strength of the government's evidence. Moreover, even if the Court were to find that counsel's conduct was unreasonable, Petitioner was not prejudiced because he never exhibited any intention to plead guilty, choosing instead to continually lie to his counsel, the government, and the jury. Thus, Petitioner's § 2255 motion is denied.

## I. BACKGROUND

The following are the Court's findings of fact and conclusions of law, having considered the evidence, the testimony of the witnesses, and weighing the credibility of the witnesses.

On August 9, 2007, Petitioner was indicted for conspiracy to commit murder and aggravated assault in aid of racketeering under 18 U.S.C. §§ 2, 1959(a)(3), (5)-(6). (Gov't Resp. at 2, Doc. 265.) Specifically, Petitioner was charged as a member of the Mara Salvatrucha ("MS-13") gang for driving other gang members to Springfield Mall, located in Springfield, Virginia, on October 15, 2005, where those other members assaulted an individual they believed was affiliated with a rival gang. (Id.; Order for Evidentiary Hr'g at 2, Doc. 281.) Daniel Tomas Lopez was appointed to represent Petitioner in this matter. (Doc. 187.) On August 17, 2007, Petitioner pleaded not guilty to all four counts in the Second Superseding Indictment and requested a jury trial. (Order for Evidentiary Hr'g at 1.) Between the time of his indictment and the trial, Mr. Lopez met with Petitioner six times to discuss the charges and the evidence the government would present at trial. (See Gov't Supplemental Resp., Doc. 271.)[1] Petitioner and Mr. Lopez also arranged a meeting with the prosecutors who outlined the case against Petitioner and told him the identity of witnesses who were going to testify about his involvement in the offense. (Id. at 22.) During this meeting, the government offered Petitioner a formal plea arrangement in which Petitioner would receive a ten-year sentence. Mr. Lopez also informed Petitioner that if he agreed to cooperate with the prosecutors and testify, he may be eligible to receive a shorter than ten-year prison sentence and would have the opportunity to learn English and gain permanent residency in the United States. (Evidentiary Hr'g Tr. 25, Mar. 20,

1. The Government's Supplemental Response to Petitioner's Motion is a certified translation of Petitioner's original Petition to Vacate, Set Aside or Correct his Sentence, provided to clarify the Government's characterization of Petitioner's interactions with Mr. Lopez in its original Response. Petitioner filed a Supplemental Reply to the government's Supplemental Response affirming that the substance of the translation was accurate. (See Doc. 273.)

2013.) Despite this plea offer, Petitioner maintained his not guilty plea and proceeded to a jury trial.

Petitioner's trial began on December 3, 2007. (*See* Order for Evidentiary Hr'g at 1.) Evidence presented at trial demonstrated that Petitioner was a member of the MS–13 gang and that he drove MS–13 gang members to Springfield Mall to carry out the attack. (*Id.* at 2.) The evidence further demonstrated that after driving the MS–13 members to Springfield Mall, Petitioner participated in the search for the target, served as a lookout during the assault, and drove away from the scene with the members who directly participated in the assault. (*Id.*) Petitioner testified at trial, once again stating that he was not a member of the MS–13 gang, he did not know the others involved in the attack, and he was not at Springfield Mall on October 15, 2005. (*See id.*) The jury convicted Petitioner of all four counts of attempted murder, aggravated assault, and conspiracy to commit murder and aggravated assault in aid of racketeering. (*Id.*) The Court sentenced Petitioner to twenty years in prison, incorporating a two-level enhancement under the Sentencing Guidelines for obstruction of justice because of his false testimony at trial. (Gov't Resp. at 3.)

On January 11, 2012, Petitioner filed a Motion to Vacate, Set Aside or Correct his Sentence Pursuant to 28 U.S.C. § 2255, alleging ineffective assistance throughout the course of his representation. Petitioner based his § 2255 motion on two grounds.[2] First, Petitioner contended that Mr. Lopez did not adequately explain the law of conspiracy and how Petitioner could be liable for the assault solely acting as a driver. Second, Petitioner alleged that Mr. Lopez failed to show Petitioner all of the evidence the government would produce at trial. Not having seen the entirety of the government's evidence, Petitioner did not believe it was in his best interest to plead guilty. Petitioner further argues that he would have accepted the government's offer had Mr. Lopez adequately presented the government's legal theory and enough evidence to convince Petitioner of the strength of the government's case. (*See* Gov't Supplemental Resp. at 17.) The Court requested Mr. Lopez produce an affidavit recounting his representation of Petitioner. (Doc. 264.)

Through the affidavits of Petitioner and Mr. Lopez, both parties agreed that Petitioner never told Mr. Lopez the truth about his involvement in the attack. (*See* Gov't Supplemental Resp. at 17; Lopez Aff. ¶ 2, Doc. 265–1.) During all of Petitioner's meetings with Mr. Lopez, Petitioner continuously maintained that he was not a member of the MS–13 gang, he did not know any of his co-defendants, and he did not have anything to do with the attacks. (*See* Gov't Supplemental Resp. at 17–18; Lopez Aff. ¶ 2.) The parties also agreed that Mr. Lopez told Petitioner, during their meetings, that his independent inves-

---

**2.** At the evidentiary hearing, Petitioner's current counsel raised an argument that Mr. Lopez's conduct was unreasonable because he did not seek a Spanish interpreter to communicate with Petitioner, and thus Petitioner was unable to understand Mr. Lopez's explanations of conspiracy law. However, Petitioner never indicated in his motion for relief that he could not understand Mr. Lopez because of a language barrier. Furthermore, he testified that he never asked Mr. Lopez to provide an interpreter. Thus, notwithstanding the fact that Petitioner's testimony undercuts any argument that a language barrier affected his understanding of counsel's advice, the Court's opinion will only address the two arguments presented in the parties' briefs, omitting any discussion on this new argument presented at the evidentiary hearing regarding the lack of a Spanish interpreter.

tigation indicated that Petitioner participated in the attack, and that Mr. Lopez thought the government had a substantial amount of evidence against him. (Gov't Supplemental Resp. at 17–18.) Petitioner contended that this assertion alone, without a showing of specific evidence, was insufficient to convince him the government had a strong case. (*Id.* at 20.) Petitioner further claimed that Mr. Lopez did not explain the degree of involvement necessary to be considered a "participant." (*Id.* at 18.) As such, Petitioner chose not to tell Mr. Lopez that he drove the gang members to Springfield Mall because he was afraid that admitting he played a small role would ultimately result in blame for the underlying assault. (*Id.*) Petitioner conceded that Mr. Lopez told him one of the gang members Petitioner drove in the van would testify that they left another MS–13 member's house to look for a rival gang member to take revenge for a previous attack. (*Id.* at 22.) Petitioner believed this evidence was not incriminating as long as the witness did not talk about what happened at the mall. Thus, Petitioner remained unconvinced that he should admit to his involvement and plead guilty. (*Id.* at 23.)

Mr. Lopez's account of his interactions with Petitioner differed markedly with respect to counsel's explanation of conspiracy liability. Mr. Lopez stated that he explained to Petitioner how Petitioner could be liable for the assault even though it was committed by another member of the MS–13. Mr. Lopez explained this was because Petitioner was a member of the MS–13 gang, the assault was within the scope of the gang's unlawful conspiracy, the assault was committed in furtherance of the conspiracy, and the assault was a reasonably foreseeable consequence of the conspiracy. (*See* Lopez Aff. ¶ 5.) Mr. Lopez also indicated that he drew a diagram and provided hypothetical examples to illustrate conspir-

acy liability. (*Id.* ¶ 8.) According to Mr. Lopez, Petitioner's lack of understanding rested not in comprehending what Mr. Lopez said, but rather Petitioner's refusal to accept that this was a valid legal theory. (*See id.* ¶ 5, 8.)

Mr. Lopez stated in his affidavit that he told Petitioner that two eyewitnesses were cooperating with the government and would testify that Petitioner was present at the meeting in the park where the MS–13 members created the unlawful agreement to assault rival gang members. (*Id.* at 6.) Mr. Lopez also conveyed that the eyewitnesses would testify that Petitioner volunteered to drive the members to the mall in his van, acted as a lookout, and transported the co-defendants from the scene. (*Id.*) Mr. Lopez maintained that he explained to Petitioner on multiple occasions that Petitioner could be convicted as a participant as a result of his involvement even though he did not actually stab anyone. (*Id.*)

On March 20, 2013, the Court held an evidentiary hearing on the communications between Petitioner and Mr. Lopez leading up to trial. (*See* Doc. 297.) Testimony was, for the most part, in alignment with what the parties submitted in their respective affidavits. Importantly, Mr. Lopez described in greater detail his explanations of conspiracy liability to Petitioner. Mr. Lopez testified that he used an analogy of a bank robbery in which five people agreed to rob a bank but only three of those people actually went to the bank. (Evidentiary Hr'g Tr. at 45.) In his example, the two people who stayed behind could still be held accountable for the acts of their co-conspirators because all five of them made the unlawful agreement. (*Id.*) The Court also received a copy of the diagram Mr. Lopez drew to explain to Petitioner that members of a conspiracy could be criminally liable for the acts of

another member regardless of whether they were cognizant of those acts as long as they were in furtherance of the criminal enterprise. (*Id.* at 44.) Notably, Petitioner additionally admitted in his testimony that Mr. Lopez explained conspiracy liability to him, but explained it in such a way that "caused [him] fear." (*Id.* at 27.) Petitioner conceded that he chose to lie to Mr. Lopez and the government about driving MS–13 members to Springfield Mall because he knew he would have to plead guilty as a result. (*Id.*)

Testimony at the evidentiary hearing also revealed additional details pertaining to Mr. Lopez's descriptions of the evidence the government would use at trial and what evidence Petitioner had expected to receive. Contrary to Petitioner's position that Mr. Lopez and the prosecutors did not show him all of the evidence, testimony demonstrated that both the prosecutors and Mr. Lopez told Petitioner exactly who was cooperating and that the eyewitnesses would testify about Petitioner's involvement in the assault at Springfield Mall. (*Id.* at 39–40.) Mr. Lopez and the prosecutors also showed Petitioner photos of previous MS–13 victims to illustrate the gang's previous violent acts. (*Id.* at 23, 66.) Petitioner testified that he did not think Mr. Lopez and the prosecutors had shown him all of the evidence the government would use against him because he did not see his blood in the mall or a video of the events that took place. (*Id.* at 28.)

## II. *STANDARD OF REVIEW*

A motion under 28 U.S.C. § 2255 allows a prisoner in federal custody to challenge the legality of a federal sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. When seeking relief under § 2255, a petitioner bears the burden of proving his or her grounds for collateral relief by a preponderance of the evidence. *Hall v. United States,* 30 F.Supp.2d 883, 889 (E.D.Va.1998) (citing *Vanater v. Boles,* 377 F.2d 898, 900 (4th Cir.1967)).

Relief under 28 U.S.C. § 2255 is designed to remedy fundamental constitutional, jurisdictional, or other errors, and it is therefore reserved for situations in which failing to grant relief would otherwise "inherently result[ ] in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979) (quoting *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)). A petitioner may not substitute a motion pursuant to § 2255 for an appeal; claims that have been waived are therefore procedurally defaulted unless the movant can show cause and actual prejudice. *United States v. Frady,* 456 U.S. 152, 165–67, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). An exception applies, however, when a defendant brings a claim of constitutionally ineffective assistance of counsel. *See United States v. Martinez,* 136 F.3d 972, 979 (4th Cir.1998) ("A defendant can raise the claim of ineffective assistance of counsel in three ways: (1) in a motion for a new trial based on anything other than newly discovered evidence; (2) on direct appeal if and only if it conclusively appears from the record that his counsel did not provide effective assistance; or (3) by a collateral challenge pursuant to 28 U.S.C. § 2255.").

## III. *ANALYSIS*

The Court denies Petitioner's § 2255 Motion because the Court holds that Mr. Lopez provided more than competent assistance and rendered Petitioner ef-

fective assistance of counsel. Mr. Lopez adequately advised Petitioner about his rights and liabilities. Mr. Lopez explained the government's theory of prosecution, the law, and the evidence against Petitioner such that Mr. Lopez's conduct was objectively reasonable and was not prejudicial to the outcome of Petitioner's case.

■ The Sixth Amendment affords a criminal defendant the right to "reasonably effective assistance" from counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish constitutionally defective assistance during the plea stage prior to trial, a defendant must satisfy the two-prong test outlined in *Strickland. See, e.g., Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (holding that the *Strickland* test applies to claims of ineffective assistance of counsel relating to plea negotiations). First, the defendant must show that under the totality of the circumstances, the attorney's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. Second, the defendant must establish a "reasonable probability that, but for the attorney's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. A petitioner alleging ineffective assistance of counsel must satisfy both prongs of the *Strickland* test to prevail. *See, e.g., United States v. Roane*, 378 F.3d 382, 404 (4th Cir.2004) (citing *Williams v. Kelly*, 816 F.2d 939, 946–47 (4th Cir.1987)). The Court finds that Petitioner failed to meet the burden under both prongs of the *Strickland* test, either failure being sufficient to deny Petitioner's Motion. While the Court could rest on its finding that Mr. Lopez's conduct was objectively reasonable, the Court also finds that Petitioner did not meet his burden of proving that Mr. Lopez's performance detrimentally af-

fected the outcome of his case. Thus, the Court denies Petitioner's § 2255 Motion because he fails to satisfy his burden under either prong of *Strickland.*

## A. Mr. Lopez's Performance Was Objectively Reasonable

In evaluating the first prong of the *Strickland* test, "[j]udicial scrutiny of counsel's performance 'must be highly deferential.'" *Sharpe v. Bell*, 593 F.3d 372, 382 (4th Cir.2010) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). Thus, a court must make an effort to "eliminate the distorting effects of hindsight," and presume that, at the time of the challenged action, the attorney's conduct might be the exercise of "sound trial strategy." *Strickland*, 466 U.S. at 689–90, 104 S.Ct. 2052 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). Moreover, the defendant's own actions or statements may determine or substantially influence the reasonableness of counsel's actions. *Id.* at 691, 104 S.Ct. 2052. As such, "when a defendant has given counsel reason to believe that pursing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id.*

■ In the context of plea negotiations, an attorney's failure to communicate a formal plea offer to a criminal defendant falls below an objective standard of reasonableness. *See Missouri v. Frye*, —— U.S. ——, 132 S.Ct. 1399, 1410, 182 L.Ed.2d 379 (2012). Because the negotiation of a plea bargain is often the most important for the defendant in terms of the ultimate sentence he receives, defense counsel has the obligation to communicate formal offers from the prosecution. *Id.* at 1407–08. Similarly, an attorney provides constitutionally defective assistance to a client by offering incorrect advice concern-

ing the plea agreement. *See Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 1478, 176 L.Ed.2d 284 (2010). In *Padilla*, the defendant's attorney erroneously told the defendant that his immigration status would not be affected by pleading guilty to a felony drug charge, when the defendant would actually be subjected to automatic deportation. *Id.* The Court found that this incorrect advice concerning the plea fell below an objective standard of reasonableness because the language of the relevant statute compelling deportation for drug offenses was clear and Padilla's attorney could easily have discerned the consequence of pleading guilty by reading the statute. *Id.* at 1483 ("[W]hen the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear."). Similarly, ineffective assistance arises where counsel's advice to reject a plea offer and proceed to trial is based on a faulty legal theory. *Lafler v. Cooper*, —— U.S. ——, 132 S.Ct. 1376, 1383, 182 L.Ed.2d 398 (2012).

■ While a criminal defense attorney is required to communicate a formal plea offer, provide all relevant facts, and discuss all potential alternatives, an attorney is under no obligation to recommend a particular course of action to a client. *See Jones v. Murray*, 947 F.2d 1106, 1110 (4th Cir.1991). The defense attorney in *Jones* communicated the government's plea offer to his client, reviewed the evidence against him, and discussed the strengths and weaknesses of the government's case. *Id.* Counsel estimated a seventy percent chance of conviction if his client did not accept the government's plea offer but made no recommendation to his client as to whether his client should plead guilty. *Id.* The Fourth Circuit noted that the defendant ultimately must decide whether to accept or reject a plea agreement, and counsel is only required to advise the client

of the available alternatives and important factors to consider in weighing the client's options. *Id.* at 1111 (citation omitted); *see also Jackson v. United States*, 638 F.Supp.2d 514, 580 (W.D.N.C.2009) (quoting *Jones*, 947 F.2d at 1110–11) (explaining that ineffective assistance does not arise where "counsel deci[des] 'to refrain from a vigorous attempt to change his client's mind' "). Thus, Jones's attorney acted reasonably by advising his client of the alternatives to the government's offer and the likelihood of success if Jones decided to proceed with trial. *Jones*, 947 F.2d at 1111; *cf. Burket v. Angelone*, 208 F.3d 172, 190 (4th Cir.2000) (finding an attorney's recommendation to his client to plead guilty was reasonable in light of the overwhelming evidence of guilt).

Mr. Lopez's assistance to Petitioner was objectively reasonable because he communicated the formal plea offer, provided all relevant facts, and correctly conveyed to Petitioner the likelihood of his conviction and the consequences of pleading not guilty. Unlike the attorneys in *Frye* and *Padilla*, Mr. Lopez communicated the government's offers in a timely and accurate manner, and gave Petitioner advice that was in his best interests to accept. *Cf. Frye*, 132 S.Ct. at 1408; *Padilla*, 130 S.Ct. at 1483. Mr. Lopez further exceeded his responsibilities to Petitioner as explained in *Jones* by continually urging Petitioner to accept the government's plea agreement, something Mr. Lopez was not required to do to meet the threshold of reasonableness. *See Jones*, 947 F.2d at 1110–11. Petitioner cannot succeed on collateral attack for ineffective assistance of counsel when Mr. Lopez went above and beyond his constitutional requirements. Mr. Lopez was only required to provide enough evidence and explanation of the law to allow Petitioner to come to his own conclusions, and the Court finds that Mr. Lopez sufficiently communicated the rele-

vant information. Once it became clear to Mr. Lopez that Petitioner understood conspiracy liability, but refused to accept it, Mr. Lopez was not constitutionally obligated to belabor the issue until Petitioner came to terms with the likelihood of his conviction. *Cf. United States v. King,* 36 F.Supp.2d 705, 709 (E.D.Va.1999) (citing *Jones,* 947 F.2d at 1111) ("[G]iven King's stated insistence on presenting his duress defense, [counsel] cannot be faulted for failing to argue a position that only would have fallen on deaf ears.").

The Court rejects Petitioner's assertion that Mr. Lopez did not explain what it meant to be a participant and how Petitioner could be liable for transporting other MS–13 members to the mall. The Court finds that the diagram and hypothetical example Mr. Lopez used to explain conspiracy liability to Petitioner accurately analogized the liability resulting from Petitioner's role in the events of October 15, 2005. Moreover, Petitioner's own statements at the evidentiary hearing revealed that he understood at the time what Mr. Lopez told him about conspiracy law and that he simply chose not to accept it. Petitioner testified that he did not tell Mr. Lopez that he drove the van to Springfield Mall after Mr. Lopez explained conspiracy liability because he knew it would make him guilty of the charges. (*See* Evidentiary Hr'g Tr. at 27.) Mr. Lopez also testified that after he explained the government's theory, Petitioner replied that the educated people in the United States "would [n]ever accept that this was a valid theory and that there was no way they would ever be able to find him guilty under this theory because it just … doesn't make any sense and it's not fair." (*Id.* at 45.) Petitioner therefore understood that by driving the car, he could be considered a "participant" and found culpable for the assault. As such, Petitioner's understanding of conspiracy liability actually reinforced his decision to lie about his participation because he knew he would have to plead guilty to the crimes charged. (*Id.*) Thus, Mr. Lopez adequately explained the government's theory of liability. That Petitioner was unwilling to accept the government's theory does not mean Mr. Lopez did not adequately explain it to him, nor does it render Mr. Lopez's conduct constitutionally unreasonable under the highly deferential review required by *Strickland. See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

The Court also finds that Mr. Lopez adequately explained the strength of the evidence against Petitioner because Mr. Lopez discussed all of the evidence he received from the government and he arranged for a face-to-face meeting for Petitioner where the prosecutors put on a reverse proffer to further confirm what proof would be used against Petitioner. Petitioner's argument that Mr. Lopez failed to render effective assistance because he did not "show" any evidence is flawed. Mr. Lopez provided Petitioner with an opportunity to hear about the evidence the government possessed and assured him it would almost certainly result in a conviction. That the evidence consisted largely of eyewitness testimony does not lead to the conclusion that Mr. Lopez did not sufficiently explain the strength of the government's case. The Court rejects Petitioner's arguments to the contrary.

Petitioner alleged that Mr. Lopez did not show him specific evidence linking him to the crime, and asserted that Mr. Lopez only spoke about the evidence in general terms. (*See* Gov't Supplemental Resp. at 18.) In fact, both Mr. Lopez and the prosecutors told Petitioner who was cooperating with the government and that these individuals were going to testify about everything that happened at the mall that day. (*See* Evidentiary Hr'g Tr.

at 24.) Mr. Lopez also showed Petitioner photos of other MS–13 victims because the government would use that evidence to demonstrate that Petitioner was a member of MS–13 and to demonstrate to the jury the kinds of endeavors the gang undertakes. (*See id.* at 23, 66.) Mr. Lopez further provided Petitioner with details about the day of the attack to show the reliability of the government's evidence. (Gov't Resp., Aff. A ¶¶ 19–20.) Still, Petitioner maintained that Mr. Lopez did not "show" him that the government actually had any evidence against him. (*See* Evidentiary Hr'g Tr. at 27–28.) Petitioner seemed to be under the impression that the government could not satisfy its burden without a video of him driving the MS–13 members to the mall and blood linking him to the scene of the crime. (*See id.* at 28.) Mr. Lopez never indicated to Petitioner that the government could not meet its burden without such video or blood evidence. (*Id.*) In fact, Mr. Lopez indicated that the eyewitness testimony would be sufficient, repeatedly advising Petitioner that the evidence was "overwhelming" and would certainly return a conviction. (*Id.* at 42.) Petitioner's insistence that the government did not have enough evidence against him, despite Mr. Lopez's repeated assurances to the contrary, does not render Mr. Lopez's performance outside the "wide range of reasonable professional assistance...." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052.

Mr. Lopez further exceeded his constitutional obligation by coordinating the reverse proffer with the prosecutors to show Petitioner that the government in fact possessed sufficient evidence to support a conviction in the hopes that Petitioner would decide to plead guilty. (*Id.* at 49.) Under *Jones,* Mr. Lopez was only required to explain the government's evidence and discuss Petitioner's alternatives. *Jones,* 947 F.2d at 1110 (holding that a criminal de-

fense attorney was not required to make a recommendation to his client about whether he should plead guilty). The evidence proffered by the prosecutors to Petitioner in prison echoed what Mr. Lopez described to Petitioner during the course of their meetings. Petitioner still refused to accept that he could be convicted based on witness testimony. (*See id.* at 50.) Additionally, Mr. Lopez urged Petitioner in the strongest possible terms to accept the evidence and plead guilty. (*See id.* at 51–52.) The Court finds that Mr. Lopez made every effort to convey to Petitioner what evidence the government would bring, and to convince him that it was in his best interests to accept the government's offer and plead guilty. Accordingly, because the Court finds that Mr. Lopez adequately conveyed the government's legal theory and the evidence against Petitioner, Mr. Lopez's representation was constitutionally adequate under the first prong of *Strickland.*

## B. Mr. Lopez's Conduct Did Not Prejudicially Effect the Judgment

The Court further finds that Mr. Lopez's conduct did not have a prejudicial effect on the judgment in Petitioner's case. To demonstrate that counsel's conduct was prejudicial under the second prong of *Strickland,* a defendant has the affirmative duty to show that there is a reasonable probability the outcome of the trial would have been different absent counsel's errors. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. In the context of plea negotiations, the prejudice element turns on whether counsel's performance affected the defendant's final decision to accept or reject a plea offer. *Hill,* 474 U.S. at 59, 106 S.Ct. 366. A petitioner asserting ineffective assistance of counsel related to a plea offer must show demonstrate two elements. First, a petitioner must show a

"reasonable probability that [ ] 'they would have accepted the earlier plea offer had they been afforded effective assistance of counsel.'" *Merzbacher v. Shearin,* 706 F.3d 356, 366 (4th Cir.2013) (quoting *Frye,* 132 S.Ct. at 1409). Second, the petitioner must also demonstrate that the prosecution would not have withdrawn the offer and the court would have accepted the plea agreement. *Id.* (citing *Frye,* 132 S.Ct. at 1409 and *Lafler v. Cooper,* —— U.S. ——, 132 S.Ct. 1376, 1385, 182 L.Ed.2d 398 (2012)). Prejudice can only be established if the end result would have been more favorable to the defendant in the form of a lesser charge or a shorter sentence. *Frye,* 132 S.Ct. at 1409.

The Court holds that Petitioner fails to demonstrate prejudice prong because his testimony precludes a finding that he intended to plead guilty prior to the alleged error by counsel. "[A]fter the fact testimony concerning a defendant's desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." *Berry v. United States,* 884 F.Supp.2d, 453, 463 (E.D.Va.2012) (citing *Diaz v. United States,* 930 F.2d 832, 835 (11th Cir.1991)). Accordingly, to obtain relief here, Petitioner here must credibly demonstrate that he held an intention to plead guilty prior to Mr. Lopez's alleged error caused him to reject the government's plea offer. *See Merzbacher,* 706 F.3d at 366-67 ("But it is entirely clear that to demonstrate a reasonable probability that he would have accepted a plea, a petitioner's testimony that he would have done so must be credible."). The court in *Berry* rejected the petitioner's argument that his counsel's flawed advice was dispositive because the petitioner received the government's offer at least one month before trial and petitioner never gave any indication that he would accept it. *Id.* Berry never alleged that counsel failed to communicate the plea offer; rather the alleged error was counsel's advice to proceed to trial. *Id.* However, Berry testified under oath at trial proclaiming his innocence, which significantly undercut his contention that his attorney's actions caused him to reject the government's plea bargain. *Id.* Thus, the court found that the petitioner did not meet his burden of showing that but for his attorney's errors, he would have chosen to plead guilty. *Id.*

Conversely, the petitioner in *Lafler* succeeded in demonstrating that his attorney's advice caused him to reject the plea bargain because the petitioner admitted his guilt and indicated he would accept the government's offer during a correspondence with the court. 132 S.Ct. at 1383. The petitioner later rejected the formal offer only after his attorney convinced him that the prosecution could not prove all elements of the charges against him. *Id.* Because he established *ex ante* that he would have pled guilty but for his attorney's errors, the Court held his attorney's performance was damaging to the outcome of his case. *Id.* at 1386-87. The petitioner in *Frye* similarly met his burden of demonstrating a reasonable probability that the he would have accepted the government's prior offer because he later pleaded guilty to a more serious charge. 132 S.Ct. at 1411.

■ Even assuming the Court could find that Mr. Lopez's performance was constitutionally deficient, which it was not, Petitioner failed to establish that he was prejudiced by Mr. Lopez's conduct. Most importantly, Petitioner did not meet his burden of demonstrating a reasonable probability that he would have accepted the government's plea offer absent Mr. Lopez's alleged errors. Petitioner never wavered from his position that he was innocent of the crimes for which he was

charged, he did not know his co-defendants, and he was not at Springfield Mall on the day in question. Petitioner went so far as to falsely testify under oath denying his participation in the events. (Gov't Resp. at 3.) The Court finds no indication in the record that Petitioner had any intention of pleading guilty had he been satisfied with Mr. Lopez's assistance. An *ex poste* assertion, without more, is insufficient to meet his burden under *Strickland.* *See Berry,* 884 F.Supp.2d at 463 (citing *Diaz,* 930 F.2d at 835).

Petitioner's conduct is strikingly similar to the defendant in *Berry.* In *Berry,* the petitioner received the government's plea offer one month prior to trial. *Berry,* 884 F.Supp.2d at 463. Here, the prosecutors communicated the government's formal plea offer to Petitioner months before his trial, and Mr. Lopez continuously urged Petitioner to accept the government's offer. (Evidentiary Hr'g Tr. at 16.) Just as the defendant in *Berry* falsely testified under oath that he was innocent, Petitioner perjured himself by denying any involvement with MS–13 and particularly by denying his participation in the assault at the mall on October 15, 2005. (Gov't Resp. at 3.) The Court finds Petitioner's consistent dishonesty telling, and Mr. Lopez's conduct likely had no effect on Petitioner's ultimate decision to plead not guilty. Unlike the defendants in *Lafler* and *Frye,* Petitioner never admitted to his guilt in any communications with the Court or the prosecutors, and never expressed a willingness to take responsibility for his actions. Even after the prosecution presented overwhelming evidence linking Petitioner to the Springfield Mall incident on October 15, 2005, Petitioner never wavered from his not guilty plea. Thus, the Court is not persuaded that Mr. Lopez's conduct created any prejudicial effect on the outcome of Petitioner's case. It is also worth noting that Petitioner's

claim also fails under the second prong of *Strickland,* even assuming Petitioner would have accepted the offer, because Petitioner did not allege the prosecutors and the Court would have adhered to the agreement. *See Frye,* 132 S.Ct. at 1411 (remanding because the defendant did not have the opportunity to demonstrate that the prosecutors and the trial court would have accepted the government's plea offer). Thus, because Petitioner failed to satisfy his burden under the second prong of *Strickland,* Petitioner's § 2255 motion is denied.

## IV. *CONCLUSION*

For the foregoing reasons, the Court denies Petitioner Santos Carillo–Morales's Petition to Vacate, Set Aside or Correct his Sentence Pursuant to 28 U.S.C. § 2255. Petitioner failed to make the requisite showing under *Strickland* that counsel's performance fell below an objective level of reasonableness. Furthermore, Petitioner failed to demonstrate that any unreasonable conduct by Petitioner's counsel had any prejudicial effect on the outcome of Petitioner's case. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Santos Carillo–Morales's Petition to Vacate, Set Aside or Correct his Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 246) is **DENIED.**

**IT IS SO ORDERED.**